James Hail **BENSON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–05–00063–CR.

Court of Appeals of Texas, Houston (1st Dist.).

April 5, 2007.

---

Tony Aninao, Houston, for Appellant.

Carol M. Cameron, Assistant District Attorney, Houston, for Appellee.

Panel consisted of Justices KEYES, ALCALA, and BLAND.

## EN BANC OPINION

ELSA ALCALA, Justice.

Appellant, James Hail Benson, appeals from the trial court's judgment that revoked his deferred adjudication and sentenced him to 12 years in prison and a $500 fine for the second-degree felony of aggravated assault with a deadly weapon. *See* TEX. PEN.CODE ANN. § 22.02(a)–(b) (Vernon Supp.2006). In his first issue, appellant asserts that the trial court erred by failing to appoint appellate counsel in time for him to file a motion for new trial. He asks that we abate the present appeal and remand the cause to the trial court for an evidentiary hearing to determine whether he received effective assistance of counsel during the period for filing a motion for new trial. In his second and third issues, appellant contends that the 12–year sentence constitutes cruel and unusual punishment and violates his due process rights. We conclude that the Court of Criminal Appeals has disapproved of our procedure that requires abatement for an evidentiary hearing, as set forth in *Jack v. State,* 42 S.W.3d 291, 294 (Tex.App.-Houston [1st Dist.] 2001, order) (*Jack I* ). *See also Jack v. State,* 64 S.W.3d 694, 696–97 (Tex.App.-Houston [1st Dist.] 2002) (*Jack II* ), pet. dism'd, 149 S.W.3d 119 (Tex. Crim.App.2004) (*Jack III* ). We decline to abate the appeal, and hold that appellant has failed on direct appeal to rebut the presumption that he was represented by trial counsel during the period of time for filing a motion for new trial. We further hold that he waived the right to complain about the length of his sentence because he failed to object on those grounds to the trial court. We affirm.

## Procedural Background

In February 2000, the trial court accepted appellant's guilty plea and placed him on five years' deferred adjudication community supervision for aggravated assault. About four years later, the State filed a motion to adjudicate appellant's guilt, alleging that he committed another aggravated assault with a deadly weapon. Appellant, who was represented by appointed

attorney John Clark, pleaded not true to the allegation. Following an evidentiary hearing, the trial court found the allegation true. In the punishment phase of the hearing, no additional evidence was introduced, but each side made a closing argument, with the State requesting a sentence near the maximum of 20 years and appellant's attorney asking for a sentence in the range of five or six years. The trial court sentenced appellant to 12 years in prison and a $500 fine on July 20, 2004. After appellant was sentenced, his trial counsel neither objected to the sentence, nor filed a motion to withdraw from the case, nor filed anything else with the trial court.

Nine days after sentencing, appellant filed a pro se notice of appeal. Appellant's pro se notice of appeal states, "Appellant, an indigent, prays for the setting of APPEAL BOND, and NOT BEING REPRESENTED BY COUNSEL SINCE SENTENCING also prays for the APPOINTMENT OF APPELLATE COUNSEL." On January 14, 2005, almost five months after appellant filed the notice of appeal, the trial court certified appellant's right of appeal,[1] which included the notation that appellant's attorneys were "J. Clark/J. Guerinot." On February 18, 2005, appellant filed a pro se motion in this Court requesting an extension of time to file a pro se brief.

On March 7, 2005, we abated the appeal. In our order of abatement, we stated, "The problem is that appellant is not represented by counsel *on appeal.*" (Emphasis added.) We ordered the trial court to conduct a hearing to determine whether appellant wished to pursue the appeal and whether appellant was indigent. Our order required the trial court to appoint appellate

counsel for appellant if appellant desired to pursue the appeal and was found to be indigent. On April 15, 2005, the trial court conducted the hearing that was ordered by our abatement. At the hearing, the trial court found appellant to be indigent and appointed appellate counsel for appellant. At the time that appellate counsel was appointed, the trial court judge stated, "Well, I don't know why you weren't appointed a lawyer *on appeal* ... because you should have been appointed a lawyer...." (Emphasis added.) The hearing following our March 7 abatement did not address whether appellant was represented by *trial* counsel during the 30–day–window for filing a motion for new trial; rather, it concerned only whether appellant was represented by appointed counsel to pursue the appeal.

After we reinstated the appeal, appellant's newly appointed appellate counsel filed an appellate brief that requested a second abatement of the case, citing to *Jack I* and *Jack II. See Jack I,* 42 S.W.3d at 294; *Jack II,* 64 S.W.3d at 696–97. On July 19, 2006, we issued an order that abated this cause for a second time. Our order stated, "We abate the appeal and remand the cause for a hearing to determine whether appellant had counsel, and whether he received ineffective assistance of counsel, during the 30–day period for filing a motion for new trial." While the first abatement order instructed the trial court to address appellant's lack of representation by *appellate* counsel for the appeal, in the second abatement we instructed the trial court to address appellant's purported lack of representation by *trial* counsel during the 30–day period for filing a motion for new trial. In our order abat-

---

1. Appellant has a right to appeal the sentencing phase of the motion to adjudicate hearing. *See Kahookele v. State,* 189 S.W.3d 303, 304 (Tex.Crim.App.2006) (en banc); *Hargesheimer v. State,* 182 S.W.3d 906, 911 (Tex.Crim.App. 2006); Tex.Code Crim. Proc. Ann. art. 42.12 § 5(b) (Vernon Supp.2006).

ing the case for the second time, we stated, "Once the appeal is reinstated, we will rule on appellant's request to file an out-of-time motion for new trial." We therefore did not rule on the merits of whether we would allow appellant to file an out-of-time motion for new trial, which was the ultimate remedy sought by appellant. Instead, we opted to wait to decide that issue until after the trial court conducted an evidentiary hearing on whether appellant was represented by *trial* counsel during the 30–day window for filing a motion for new trial.

The State filed a motion to reconsider the order that abated the case for a second time. Upon the State's motion requesting rehearing, and after requesting a response from appellant, we withdrew the order abating this case, and reinstated the appeal on September 6, 2006. The trial court, therefore, never conducted the evidentiary hearing that had been ordered in the second abatement, concerning whether appellant was represented by *trial* counsel during the 30–day–window for filing a motion for new trial.

### Representation During Window for Filing Motion for New Trial

In his first issue, appellant contends that he was denied his right to counsel at a critical stage of the proceedings against him—the period of time for filing a motion for new trial—because the trial court failed to appoint appellate counsel immediately after sentencing. Appellant requests remand of the cause to the trial court with instructions that appellant be permitted to file a motion for new trial and for the trial court to conduct a hearing on the motion. The State responds that we should discontinue our practice of abating appeals for the trial court to determine whether appellant was deprived of counsel during the period of time for filing a motion for new

trial because we lack statutory or procedural authority to do so, and because the Court of Criminal Appeals has disapproved of the practice.

### A. Time Period for Filing Motion for New Trial is Critical Stage of Proceeding

A defendant has a right to file a motion for new trial, but must do so no later than 30 days after sentence is imposed. *See* Tex.R.App. P. 21.4(a). A trial court has 75 days from the imposition of sentence to rule on the motion for new trial. Tex. R.App. P. 21.8(a).

■ Although a motion for new trial is not required in order to present a point of error on appeal, *see* Tex.R.App. P. 21.2, a hearing on the motion serves to develop evidence that is not otherwise in the record. *See Oldham v. State,* 977 S.W.2d 354, 361 (Tex.Crim.App.1998) (en banc). Motions for new trial have been used primarily for claims of newly discovered evidence or jury misconduct, and are helpful for developing evidence of a trial attorney's ineffective assistance of counsel, particularly when the issues concern a claim that is premised on a trial attorney's failure to act. *See id.* at 361–62.

■ Texas courts of appeals have held the period for filing a motion for new trial is a critical stage at which a defendant is entitled to counsel. *See Prudhomme v. State,* 28 S.W.3d 114, 119 (Tex.App.-Texarkana 2000, order), *disp. on merits,* 47 S.W.3d 683 (Tex.App.-Texarkana 2001, pet. ref'd); *Hanson v. State,* 11 S.W.3d 285, 288–89 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd); *Massingill v. State,* 8 S.W.3d 733, 736–37 (Tex.App.-Austin 1999, order), *disp. on merits,* Nos. 03–99–00301–CR, 03–99–0302–CR, 2000 WL 564168 (Tex.App.-Austin, May 11, 2000, pet. ref'd) (not designated for publication); *Burnett v. State,* 959 S.W.2d 652, 656 (Tex.App.-

Houston [1st Dist.] 1997, pet. ref'd). When a defendant is deprived of effective counsel during the period for filing a motion for new trial, the remedy is to reset the appellate time limits. *See Ward v. State,* 740 S.W.2d 794, 800 (Tex.Crim.App. 1987) (en banc). Here, appellant did not file a motion for new trial, but in his brief he contends that had he been represented by counsel after sentencing, he would have filed a motion for new trial alleging ineffective assistance of trial counsel. If appellant was deprived of effective counsel during the window for filing a motion for new trial, then our remedy would be to reset the appellate time periods to allow him to file the motion for new trial. *See id.* We determine whether appellant was deprived of effective counsel during the window for filing a motion for new trial by applying the rebuttable presumption set forth by the Court of Criminal Appeals. *See id.* at 798.

## B. Appellate Courts Must Presume that Trial Counsel Continues Representation

### 1. The Presumption

■ "Appointed trial counsel remains as the defendant's counsel for all purposes until he is expressly permitted to withdraw, even if the appointment was for the trial only." *Id.* "[I]t is abundantly clear that an appointed attorney's legal responsibilities do not magically and automatically terminate at the conclusion of the trial ... The continuity of representation from trial to appeal is necessary to correct the ambiguity of representation which all too often follows a conviction." *Id.* at 796–97. "[T]rial counsel, retained or appointed, has the duty, obligation, and responsibility to consult with and fully to advise his client concerning meaning and effect of the judgment rendered by the court, his right to appeal from that judgment, and the neces-

sity of giving notice of appeal and taking other steps to pursue an appeal, as well as expressing his professional judgment as to possible grounds for appeal and their merit, and delineating advantages and disadvantages of appeal." *Ex Parte Axel,* 757 S.W.2d 369, 374 (Tex.Crim.App.1988) (en banc).

■ Our appellate review, therefore, begins with the presumption that trial counsel continued to effectively represent appellant during the window for filing a motion for new trial. *See Ward,* 740 S.W.2d at 798; *Oldham,* 977 S.W.2d at 361. Further, we presume that the reason that a motion for new trial was not filed was because the appellant considered filing it but opted not to file it. *Oldham,* 977 S.W.2d at 363 ("When a motion for new trial is not filed in a case, the rebuttable presumption is that it was considered by the appellant and rejected."). The presumption that trial counsel continued to represent the appellant, however, may be rebutted. *See id.*

### 2. Evidence Necessary to Rebut Presumption

■ If a defendant rebuts the presumption by showing that he was not adequately represented during the period for filing a motion for new trial, then the remedy is to abate the proceedings and restart the appellate timetable. *See Ward,* 740 S.W.2d at 800. The burden to produce evidence to rebut the presumption falls on the appellant. *See Oldham,* 977 S.W.2d at 363.

■ To defeat the presumption, the record must show more than the mere facts that

- appellant filed a pro se notice of appeal and indigency;
- the trial court noted that the appellate attorney was "to be determined";

- the trial court appointed appellate counsel after the expiration of the time for filing a motion for new trial;

- on appeal, appellant claims that he would have complained about ineffective assistance of counsel in a motion for new trial, had one been presented;

- appellant appeared in court without counsel when he signed the pauper's oath requesting appointed appellate counsel; and

- the record shows no activity by trial counsel or any motion to withdraw from the case.

*Oldham*, 977 S.W.2d at 362–63 (holding that facts that Oldham filed pro se notice of appeal and indigency, that trial court noted that attorney of record on appeal was "to be determined," that trial counsel did not withdraw from case or conduct any activity after Oldham was sentenced, and that trial court appointed appellate counsel after expiration of window for filing motion for new trial, were insufficient to rebut presumption that trial counsel continued to represent appellant during window for filing motion for new trial); *Smith v. State*, 17 S.W.3d 660, 662–63 (Tex.Crim.App. 2000) (*Smith II*) (reversing *Smith v. State*, 990 S.W.2d 893 (Tex.App.-Houston [1st Dist.] 1999) (*Smith I*)) (holding that facts that Smith filed pro se notice of appeal, that trial court appointed appellate counsel after expiration of window for filing motion for new trial, that Smith was brought to court without counsel when he signed pauper's oath to receive appointed *appellate* counsel, and that Smith complained about ineffective assistance of counsel that he claims he would have developed at motion for new trial hearing, were insufficient to rebut presumption that trial counsel continued to represent appellant during window for filing motion for new trial).

In *Oldham*, the Court of Criminal Appeals explained why each of these facts was insufficient to rebut the presumption of continued representation by trial counsel. *Oldham*, 977 S.W.2d at 362–63. Concerning the fact that appellant filed a pro se notice of appeal, the Court of Criminal Appeals explained that the filing of the notice of appeal is evidence that the appellant was informed of at least some of his appellate rights. *Id.* at 363. Other circumstances that show an absence of representation by *appellate* counsel do not translate into an absence of representation by *trial* counsel, who is presumed to have continued to effectively represent the appellant, "unless the record affirmatively displays otherwise." *See id.* at 362–63. The court concluded in *Oldham* that "the record shows that the appellant was officially represented by counsel at all times in the litigation, and the appellant has failed to overcome the presumption that counsel was acting effectively at all times." *Id.* at 363.

The Court of Criminal Appeals' decisions in *Oldham* and *Smith* thus require that appellate courts presume that the appellant was represented by counsel during the window for filing a motion for new trial unless the defendant rebuts the presumption. However, in *Jack I* we declined to apply the presumption immediately, and instead ordered the abatement of the appeal for a factual determination by the trial court to determine whether appellant was represented by counsel during the window for filing a motion for new trial. *Jack I*, 42 S.W.3d at 294. We then applied the *Oldham* and *Smith* presumptions after abatement of the case. *Id.* at 292–94. Because the State is requesting that we discontinue these abatements, we review in more detail the *Jack* decisions.

## C. The *Jack* Decisions

### 1. *Jack I* Requires an Initial Abatement by Appellate Court

In *Jack I*, we held that "an abatement is proper to allow appellant the opportunity to rebut the rebuttable presumption that he was effectively represented by [his trial counsel] during the 30–day period after [sentencing]." *Id.* at 293. We remanded "the cause for a hearing to determine whether appellant had counsel, and whether he received effective assistance of counsel, during the 30–day period for filing a motion for new trial." *Id.* at 294. In opting to abate the case, we expressly declined to apply the *Smith* and *Oldham* presumption at that time, noting instead that we would carry the issue. *Id.* at 293.

We did not set out a test for determining when abatement was warranted, commenting only that, "Whether abatement is appropriate will depend, of course, on the facts of each case" and that "it is appropriate in this case." *Id.* at 294. In *Jack I*, we observed that, "Everything in the record indicates that appellant was not assisted by counsel during the 30–day critical stage for filing a motion for new trial." *Id.* at 293. We referred to the record that showed that

- the trial judge made a statement on the docket sheet that indicated that an attorney on appeal was to be appointed;
- the district clerk made a statement in a letter to the court of appeals stating that the attorney of record for the appeal was to be determined;
- appellant and his appellate attorney's motion to abate the appeal indicated that had appellate counsel been appointed within the 30–day critical stage for filing a motion for new trial, she would have filed a motion for new trial alleging ineffective assistance of

trial counsel because trial counsel did not subpoena material witnesses;[2] and

- trial counsel did not file a motion for new trial, or move to withdraw from the case.

*Id.* at 292. We stated in *Jack I* that, "The present record may be stronger in some respects for appellant than the record in *Smith*," but we opted to abate the case rather than to " 'determine' the facts based upon the present record, nor yet grant the motion for an out-of-time motion for new trial." *Id.* at 293.

Based on the record in the direct appeal of *Jack I*, the only difference between the *Jack* cases, *Oldham*, and *Smith* appears to be that in the *Jack* cases, the defendant did not file a pro se notice of appeal, as opposed to Oldham and Smith, who did file pro se notices of appeal. *See id.* at 292. If *Jack I* controls this case, therefore, we must abate the appeal for a factual determination to be conducted by the trial court on the issue of whether appellant was represented by counsel during the period for filing a motion for new trial, and we may not apply the presumption in *Oldham* and *Smith* until after such an abatement occurs. *See id.* at 293. Stated more plainly, *Jack I* requires that we *defer* the presumption—that the defendant was effectively represented by counsel during the period for filing a motion for new trial—until after the case is abated to the trial court where *additional facts* will be acquired, but the Court of Criminal Appeals in *Oldham* and *Smith* requires that we *immediately* apply the presumption based on the evidence that is available in the direct appeal, *without abating for additional*

---

**2.** We note that the Court of Criminal Appeals has expressed its disapproval of our consideration of an affidavit attached to a motion filed with this court, which was not a part of our

appellate record. *See Jack v. State,* 149 S.W.3d 119, 121 n. 1 (Tex.Crim.App.2004) (*Jack III* ).

*facts.* In short, in *Jack I* we added a step to the appellate process.

## 2. *Jack II* Requires a Second Abatement by Appellate Court

After the abatement in *Jack I*, the trial court conducted the evidentiary hearing that we ordered, and it entered findings of fact and conclusions of law concerning trial counsel's representation of Jack during the period for filing a motion for new trial.[3] *Jack II*, 64 S.W.3d at 695–96. We then lifted the order of abatement. It was not until after we lifted the order of abatement that we applied the Court of Criminal Appeals' presumption that trial counsel continued to effectively represent Jack during the window for filing a motion for new trial. *See id.* at 696. We determined that the evidence presented to the trial court during the first abatement was sufficient to rebut the presumption that trial counsel continued to represent Jack during the period for filing a motion for new trial. *Id.* We held, "[t]he proper remedy is to abate the appeal and remand the cause to recommence the time period for filing a new trial motion." *Id.* at 697. In short, in *Jack II*, we restarted the appellate timetable and ordered that the case be abated to allow Jack the opportunity to file a motion for new trial and request a motion for new trial hearing.

*Jack II* was a per curiam order. En banc review was requested and a majority of the court denied the request, with several justices dissenting. The State filed a petition for discretionary review of our *Jack II* decision, which the Court of Criminal Appeals addressed in *Jack III*. *See Jack III*, 149 S.W.3d at 123.

### 3. *Jack III*

After initially granting the petition for discretionary review, the Court of Criminal Appeals dismissed the petition because it concluded that the order was interlocutory. *Id.* at 123–25. However, in discussing its procedural posture, the Court of Criminal Appeals criticized the abatement procedure employed by our court. *Id.* at 121–23. The court said, "The First Court of Appeals explicitly stated that it was *not* relying upon TEX.R.APP. P. 2, but it did not state what rule that it *was* relying upon."

---

**3.** The trial court's findings of fact following the abatement hearing stated,

FINDINGS OF FACT

. . .

2. Attorney Jeff Hale was appointed to represent the defendant.
3. Attorney Jeff Hale represented the defendant at his jury trial.
4. On July 6, 2000, the defendant was convicted. . . .
5. On July 6, 2000, a pro se Notice of Appeal was filed. The Notice of Appeal was completed by Mr. Hale and signed by the defendant at Mr. Hale's instruction.
6. Mr. Hale did not discuss the merits and/or grounds for a Motion for New Trial with the defendant.
7. Mr. Hale told the defendant that he no longer represented the defendant and that appellate counsel would be appointed.
8. The court staff advised Mr. Hale that he no longer represented the defendant and that appellate counsel would be appointed.

9. Mr. Hale did not speak with or in any way counsel the defendant after July 6, 2000.
10. Mr. Hale believed his duties were completed with the end of the jury trial on July 6, 2000.
11. The defendant was not aware of the 30–day time limit for filing a motion for new trial.
12. The defendant relied on Mr. Hale's assurance that the court would appoint appellate counsel.
13. The defendant was not aware of his appellate rights and did not attempt to represent himself.
14. On September 13, 2000, appellate counsel, Mary Acosta, was appointed.

*Jack v. State*, 64 S.W.3d 694, 695–96 (Tex. App.-Houston [1st Dist.] 2002, pet. dism'd) (*Jack II*).

*Id.* at 121 (emphasis in original).[4] The Court of Criminal Appeals referred to Justice Taft's dissent in *Jack II*, as follows:

> Although agreeing that the "double abatement" procedure might be an admirable exercise in equity, Justice Taft dissented because the court had no "authority to create a new abatement mechanism, even to achieve a just result." . . . He stated that "The [original abatement] order set an ill-advised judicial precedent by adding a new, time-consuming step to the appellate process without citing any supporting authority on point," and argued that "the double abatement procedure established in our order does not conserve judicial resources."

*Id.* at 122. After quoting Justice Taft's dissent, the Court of Criminal Appeals observed that the abatement procedure in Jack did not conserve judicial resources, but rather "had the opposite effect" because "[b]y twice remanding the case, the beginning of the appellate timetable had already been delayed by more than eighteen months." *Id.* The court held that it could not review the interlocutory decision, "[r]egardless of the validity of the procedure ordered by the court of appeals[.]"

*Id.* at 125. But, citing its decisions in *Ward, Oldham,* and *Smith,* the Court of Criminal Appeals observed that "the State is correct" that it "has thrice reviewed this out-of time motion for new trial abatement procedure and has held, in those cases, that the Rules of Appellate Procedure did not permit this practice." *Id.* at 123–24.

 Although the Court of Criminal Appeals held that its review of the abatement procedure in *Jack II* was interlocutory, it repeatedly criticized our decision by noting that the abatement was not authorized by the Rules of Appellate Procedure. *See id.* at 124. We thus conclude that the Court of Criminal Appeals has disapproved of the abatement procedure used in *Jack I* and *Jack II* and questioned our legal authority to abate the appeals in that case. *Id.* In view of its disapproval, and its observation that the *Jack* procedure does not comport with the Court of Criminal Appeals' decisions in the area, we follow the pronouncements of our superior court as stated in *Jack III,* and hold that, in view of those pronouncements, the precedential value of *Jack I* and *Jack II* has been abrogated.[5] We therefore abandon the abatement procedure used in *Jack I.*

---

**4.** Rule 2 of the Rules of Appellate Procedure reads:
> On a party's motion or on its own initiative an appellate court may—to expedite a decision or for other good cause—suspend a rule's operation in a particular case and order a different procedure; but a court must not construe this rule to suspend any provision in the Code of Criminal Procedure or to alter the time for perfecting an appeal in a civil case.
> Tex.R.App. P. 2.

**5.** Although we do not abate the appeal, we note that a defendant may develop a record of ineffective assistance of trial counsel or lack of counsel during the post-judgment phase through habeas corpus proceedings. As the Court of Criminal Appeals has previously stated, "[W]hen direct appeal has not provided

an adequate record to evaluate a claim which might be substantiated through additional evidence gathered in a habeas corpus proceeding, we will not apply the general doctrine that forbids raising a claim on habeas corpus after it was rejected on appeal." *Jackson v. State,* 973 S.W.2d 954, 957 (Tex.Crim.App. 1998); *Ex Parte Torres,* 943 S.W.2d 469, 475 (Tex.Crim.App.1997) (en banc). Therefore, although Justice Cohen noted in his dissenting opinion that, "In every *Jack* hearing so far, the evidence has shown that the defendant was denied his constitutional right to counsel during that critical stage of proceedings," *see Jack II,* 64 S.W.3d at 698 at 698, we note that this evidence could alternatively have been gathered in a habeas corpus proceeding.

*See Jack I*, 42 S.W.3d at 294.[6]

### D. The Relief Requested by Appellant

The dissenting opinions contend that our decision to abandon the abatement procedure used in *Jack I* is advisory because appellant never sought a *Jack I* abatement, and instead requested only a *Jack II* abatement to reset the appellate timetables. *See id.; Jack II*, 64 S.W.3d at 696–97. This is incorrect for two reasons. First, appellant's original appellate brief requests relief under *Jack I* and *Jack II*. Appellant states, "Appellant prays that this Honorable Court enter the following order of relief [citation to authority]: That this appeal be **ABATED** under the abatement procedures outlined in *Jack v. State*, 42 S.W.3d 291 (Tex.App.-Houston [1st Dist.] 2001) [*Jack I*] and subsequent order 64 S.W.3d 694 (Tex.App.-Houston [1st Dist.] 2002), [*Jack II*] and the cause be **REMANDED** back to the trial court. . . ." Appellant thus precisely cited to *Jack I* in his request for an abatement.

Secondly, even if we assumed that appellant had not requested an abatement under *Jack I* by requesting only a *Jack II* abatement for the resetting of the appellate timetables, we are required to follow the applicable law that controls an issue. In *Jack I*, we stated, "*Everything* in the record indicates that appellant was not assisted by counsel during the 30–day critical stage for filing a motion for new trial." *Jack I*, 42 S.W.3d at 293 (emphasis added). But rather than conclude in *Jack I* that Jack had rebutted the presumption in his presentation of the case in the direct appeal, we abated the case for Jack to have

an evidentiary hearing on the issue of whether trial counsel abandoned him. *Id.* at 293–94. We said in *Jack I* that we should abate when "it is appropriate" depending on "the facts of each case." *Id.* at 294. Therefore, even if we assumed that appellant did not request an abatement under *Jack I*, we would still have to apply the precedent of this Court, which includes the requirement that we abate for an evidentiary hearing, even when "[e]verything in the record indicates that appellant was not assisted by counsel during the 30–day critical stage for filing a motion for new trial." *See id.* at 293. Our decision thus is not advisory, because unless we abandon the *Jack I* abatement procedure, our precedent would require that we abate under *Jack I* before we could abate under *Jack II*. Our decision today to abandon the *Jack I* abatement procedure requires that we now apply the presumptions set forth in *Oldham* and *Smith* to the facts that are currently available in the record before us. *See Oldham*, 977 S.W.2d at 362–63; *Smith II*, 17 S.W.3d at 662.

### E. Application to Appellant

██ Under *Oldham* and *Smith*, we must determine whether the record evidence is sufficient to rebut the presumption that appellant was effectively represented by counsel during the post-trial period for filing a motion for new trial. *Oldham*, 977 S.W.2d at 362–63; *Smith II*, 17 S.W.3d at 662. With one exception, the facts here are identical to those in *Oldham* and *Smith*. *Oldham*, 977 S.W.2d at 362–63; *Smith II*, 17 S.W.3d at 662. Like *Oldham* and *Smith*, appellant filed a

---

**6.** Intermediate Texas courts of appeals are split regarding this type of abatement procedure. Waco and Amarillo have abated cases. *See, e.g., In re K.K.*, 180 S.W.3d 681, 681 (Tex.App.-Waco 2005, no pet.) (abating parental rights termination proceedings); *Salazar v. State*, No. 07–04–0090–CR, 2004 WL 2608303

*1 (Tex.App.-Amarillo 2004) (not designated for publication). But other courts have not. *See Hardge v. State*, No. 14–00–01095–CR, 2001 WL 1340546 *1 n. 1 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd); *Yarbrough v. State*, 57 S.W.3d 611, 616 (Tex.App.-Texarkana 2001, no pet.).

pro se notice of appeal and indigency, and the trial court appointed appellate counsel after the expiration of the window for filing a motion for new trial. *See Oldham,* 977 S.W.2d at 355; *Smith II,* 17 S.W.3d at 661. Also as in *Oldham,* trial counsel did not withdraw from the case or conduct any activity after the trial court sentenced appellant. *See Oldham,* 977 S.W.2d at 362–63. Further, no appellate attorney was appointed by the trial court when either Oldham or appellant was sentenced, with Oldham's attorney "to be determined" and appellant's attorney being appointed after an abatement to determine who his counsel was because no appellate attorney was appointed for the appeal. *See id.* at 355. Also, as in *Smith,* appellant contends on appeal that he would have developed his complaint of ineffective assistance of counsel at a motion for new trial hearing. *See Smith II,* 17 S.W.3d at 661.

The only fact that is dissimilar to *Oldham* and *Smith* is appellant's statement in his pro se notice of appeal. Appellant's pro se notice of appeal, filed nine days after he was sentenced, included the statement, "NOT BEING REPRESENTED BY COUNSEL SINCE SENTENCING [appellant] also prays for the APPOINTMENT OF APPELLATE COUNSEL." Appellant presents this Court only with the conclusory statement, made nine days after he was sentenced, that he had not been "represented since sentencing." According to the dissenting opinions, when a defendant asserts that he has not been "represented since sentencing," that statement is sufficient, in and of itself, to require that the appellate timetables be reset. We disagree.

Appellant does not assert that trial counsel failed to consult with and fully advise appellant about the "meaning and effect of the judgment rendered by the court." *See Ex Parte Axel,* 757 S.W.2d at 374. Appellant does not allege that trial counsel failed to consider or discuss the option of filing a motion for new trial, or that he refused to file one, or even that appellant made such a request. *See generally Burnett v. State,* 959 S.W.2d 652, 659 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd). Appellant further does not argue that trial counsel failed to express his professional judgment as to possible grounds for appeal and their merit, or failed to delineate advantages and disadvantages of appeal. *See Ex Parte Axel,* 757 S.W.2d at 374.

■ In short, appellant did not represent to the trial court—nor does he or his counsel represent to this Court—that trial counsel failed to advise him of his right to file a motion for new trial, to appeal from the trial court's judgment or the necessity of giving notice of appeal, or refused to take such actions after discussing them with appellant. As the Court of Criminal Appeals has noted, the filing of the notice of appeal is evidence that the appellant was informed of at least some of his appellate rights. *See Oldham,* 977 S.W.2d at 363.

In *Burnett,* we considered appellant's statement made in a notice of appeal that claimed that trial counsel told him that he needed to "write this letter to appeal the length of sentence" and concluded that the statement was insufficient to establish deprivation of counsel. *Burnett,* 959 S.W.2d at 659. We said in *Burnett,* "For all we know, trial counsel told appellant about a panoply of appellate rights, rules, odds of success, and left it up to appellant to contact counsel if appellant wanted to appeal." *Id.* Like *Burnett,* the record here is insufficient to rebut the presumption that trial counsel advised appellant about his appellate rights, rules, and odds of success. It is further insufficient to rebut the pre-

sumption that trial counsel acted in accordance with his continuing duty to represent his client. *Id.*

We cannot conclude that appellant's conclusory statement is sufficient to rebut the presumption that trial counsel continued to represent him effectively. *See Oldham,* 977 S.W.2d at 362–63; *see also Buerger v. State,* 60 S.W.3d 358, 362 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd) (disapproving of conclusory affidavits). We must presume that counsel who represented appellant at the motion to adjudicate hearing "adequately counseled" appellant and continued to represent him during the window for filing a motion for new trial *See id.* at 363. We must further presume that appointed trial counsel discussed with appellant the option of filing a motion for new trial and that appellant chose not to file one. *See id.* We hold that the record shows that appellant was officially represented by counsel at all times in the litigation, and appellant has failed to overcome the presumption that counsel was acting effectively at all times. *See id.; see also Smith II,* 17 S.W.3d at 662.

We overrule appellant's first issue.

### Waiver of Sentencing Complaints

██ In his second issue, appellant contends that his 12–year sentence for the offense of aggravated assault with a deadly weapon constitutes a cruel and unusual punishment prohibited by the Eighth Amendment. *See* U.S. CONST. amend. VIII. In his third issue, appellant contends that the 12–year sentence violated his due process rights under the Texas Constitution. *See* TEX. CONST. art. I, § 19.

██ An appellant must present to the trial court a timely, specific objection and obtain an adverse ruling to preserve for appeal his complaints concerning cruel and unusual punishment and violation of due process rights. *See* TEX.R.APP. P.

33.1(a)(1)(A); *Alexander v. State,* 137 S.W.3d 127, 130–31 (Tex.App.-Houston [1st Dist.] 2004, pet. ref'd) (holding failure to object to trial court of violations of federal and state due process rights waives appellate review of those claims); *Solis v. State,* 945 S.W.2d 300, 301 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd) (holding failure to object to trial court that sentence is grossly disproportionate to offense and violates federal and state constitutional guarantees against cruel and unusual punishment waives appellate review of those claims).

The record contains no objections by appellant concerning his 12–year sentence. We conclude that appellant waived his challenge to his 12–year sentence by failing to assert objections on the grounds that the sentence constitutes cruel and unusual punishment and violates his due process rights.

We overrule appellant's second and third issues.

### Conclusion

We affirm the judgment of the trial court.

En banc consideration was requested. TEX.R.APP. P. 41.2(c).

A majority of the Court voted for en banc consideration.

The en banc court consists of Chief Justice RADACK and Justices TAFT, NUCHIA, JENNINGS, KEYES, ALCALA, HANKS, HIGLEY, and BLAND.

Justice ALCALA, writing for the majority of the en banc Court, joined by Chief Justice RADACK and Justices TAFT, NUCHIA, HANKS, HIGLEY, and BLAND.

Justice KEYES, dissenting.

Justice JENNINGS, dissenting.

EVELYN V. KEYES, Justice, dissenting on en banc.

I respectfully dissent. This is appellant's second request for abatement. We previously abated the appeal, in February 2005, and ordered the trial court to conduct a hearing to determine whether appellant, a pro se litigant, was indigent and wished to appeal and, if so, to appoint appellate counsel. The trial court held the hearing and appointed counsel for appellant on April 15, 2005. In his second request for abatement, appellant contends the record demonstrates that he was without counsel from the date of sentencing, July 20, 2004, until April 15, 2005, when the trial court appointed appellate counsel, and, therefore, he was deprived of his constitutional right to counsel during a critical phase of these criminal proceedings. He asks that we abate the appeal and remand the cause to the trial court to start the appellate timetable running again so that he may file a motion for new trial.

When appellant first made his request for a second abatement, we mistakenly understood him to be requesting, first, abatement for a *Jack I* hearing to permit him to overcome the presumption that he was represented by counsel during the running of the appellate timetable and, second, abatement to start the appellate timetable running again so that he could file an out-of-time motion for new trial. *See Jack v. State*, 42 S.W.3d 291, 294 (Tex. App.-Houston [1st Dist.] 2001, order) (*Jack I*); *see also Jack v. State*, 64 S.W.3d 694, 696–97 (Tex.App.-Houston [1st Dist.] 2002) (*Jack II*), *pet. dism'd*, 149 S.W.3d 119 (Tex.Crim.App.2004) (*Jack III*); *Smith v. State*, 17 S.W.3d 660, 662 (Tex.Crim.App. 2000) ("[w]hen a motion for new trial is not filed in a case, the rebuttable presumption

is that it was considered by the appellant and rejected"); *Oldham v. State*, 977 S.W.2d 354, 368 (Tex.Crim.App.1998) (motions for new trial are helpful for developing evidence of trial attorney's ineffective assistance of counsel, particularly when issues concern claim premised on trial attorney's failure to act).

On July 19, 2006, the panel issued an order in response to appellant's request that abated this cause for a second time. We stated, "We abate the appeal and remand the cause for a hearing to determine whether appellant had counsel, and whether he received ineffective assistance of counsel, during the 30–day period for filing a motion for new trial." We also stated, "Once the appeal is reinstated, we will rule on appellant's request to file an out-of-time motion for new trial." We did not rule on the merits of whether we would allow appellant to file an out-of-time motion for new trial, which was the remedy appellant sought. Instead, we opted to wait to decide that issue until after the trial court conducted an evidentiary hearing on whether appellant was represented by trial counsel during the 30–day window for filing a motion for new trial. This put us in the position of ordering abatement for a purpose for which it was not sought and creating and implementing a duplicative process of our own that would require yet another abatement should we ultimately grant appellant's request to restart the appellate timetable to permit an out-of-time motion for new trial.

The State filed a motion to reconsider the order that abated the case for a second time. Upon the State's motion requesting rehearing, and after requesting a response from appellant, we withdrew our July 19, 2006 order abating this case and reinstated the appeal on September 6, 2006. The trial court, therefore, never conducted the

evidentiary hearing that had been ordered in the second abatement.

The majority of the full court now compounds the panel's error by *denying* appellant the right to the hearing he did *not* seek (to determine whether he had post-trial counsel) but which the panel inappropriately granted, holding (in my view, erroneously) on the basis of the record already before the Court that appellant did *not* overcome the presumption that he was represented by counsel in the critical post-trial period; the majority then erroneously *denies* appellant the remedy he *did* seek in the belief that he had overcome the presumption that he had had representation in the post-trial period, namely abatement to file his out-of-time motion for new trial. In the process, we overrule *Jack I*, which is before the Court only because we misconstrued appellant's request for the second abatement, and not otherwise.

The Court, like the panel, mistakenly characterizes appellant's request as a request that we abate the proceedings to allow him the opportunity to overcome the presumption that he was represented by counsel during the critical period between sentencing and the running of appellate deadlines. Such a hearing is called a *Jack I* hearing. Because I do not think the issue of overruling *Jack I* is properly presented by this case, I think it is a mistake to address it and that our en banc opinion overruling *Jack I* is advisory. Not only is a *Jack I* situation not before us, so that our overruling *Jack I* is advisory, but also by overruling *Jack I* in an improper case we make it unavailable to us in a proper case. Nothing in *Jack I* itself requires this court to hold a *Jack I* hearing when we have a record sufficient to determine whether an appellant was or was not represented by counsel in the immediate post-sentencing hearing. The majority never-

theless now posits such a requirement and overrules the requirement it posits.

As Justice Jennings' dissent likewise points out, appellant did not ask for abatement to allow him to make a record to overcome the presumption that he was represented between the time of sentencing and the time the timetable for filing a motion for new trial ran. Appellant actually argues that he has overcome the presumption, and he asks for abatement to start the appellate timetable running again. This is the appropriate remedy once it is established that an appellant was without counsel during the critical post-sentencing period. *See Ward v. State,* 740 S.W.2d 794, 800 (Tex.Crim.App.1987) (when defendant is deprived of effective counsel during period for filing motion for new trial, remedy is to reset appellate time limits); *see also Ex parte Axel,* 757 S.W.2d 369, 374–75 (Tex.Crim.App.1988) (when defendant is denied constitutional right to effective assistance of counsel in protecting and preserving his appellate rights, appellant is entitled to out-of-time appeal); *Jack II,* 64 S.W.3d at 697.

I agree with appellant that the record before this Court amply supports the conclusion that appellant was *not* represented by counsel between the time of sentencing, July 20, 2004, and the appointment of appellate counsel on April 15, 2005. As the majority acknowledges, after appellant was sentenced, his counsel neither objected to the sentence, nor filed a motion to withdraw from the case, nor filed anything else with the trial court. Appellant filed a pro se notice of appeal nine days after sentencing that clearly stated, "Appellant, an indigent, prays for the setting of APPEAL BOND, and NOT BEING REPRESENTED BY COUNSEL SINCE SENTENCING also prays for the APPOINTMENT OF APPELLATE COUNSEL." On January 14, 2005, almost five months after

appellant filed the notice of appeal, the trial court certified appellant's right of appeal. On February 18, 2005, appellant filed a pro se motion in this Court requesting an extension of time to file a pro se brief. On March 7, 2005, we abated the appeal, stating, "The problem is that appellant is not represented by counsel on appeal." We ordered the trial court to appoint appellate counsel for appellant if appellant desired to pursue the appeal and was found to be indigent. On April 15, 2005, the trial court conducted the hearing, found that appellant was indigent and wished to be represented, appointed appellate counsel, and stated, "Well, I don't know why you weren't appointed a lawyer on appeal ... because you should have been appointed a lawyer...."

There is less than a scintilla of evidence in the record that appellant had counsel at any time between July 20, 2004 and April 15, 2005. Therefore, there is nothing in the record to overcome appellant's evidence rebutting the presumption of counsel during the critical post-trial period and nothing to be gained by creating—and then denying—a requirement that we abate so that appellant can make such a record.

Nevertheless, the Court, after overruling *Jack I*, determines, solely on the basis of a string of presumptions of its own, that appellant has *not* overcome the presumption that he was represented by counsel during the time for filing a motion for new trial. I cannot imagine what more the Court would require to determine that appellant was not represented by counsel between the date of his sentencing on July 20, 2004 and April 15, 2005. Nor can I imagine on what evidentiary basis it can conclude that he has *not* overcome the presumption that he was represented by counsel during the running of deadlines in the trial court. Nor can I imagine what

purpose would be served by holding a hearing to make such a determination. Nor, finally, can I interpret appellant's request that we abate this appeal so that he can file a motion for new trial to build a record on ineffective assistance of counsel during the post-trial period as a request that the trial court hold a hearing to determine whether he had counsel during the period for filing a motion for new trial. Appellant requests a *Ward* and *Jack II* abatement, not a *Jack I* abatement.

I would hold, on the basis of *Smith* and *Oldham*, that appellant has overcome the presumption that he was represented by counsel during the running of appellate timetables and that his appellate counsel is now seeking the appropriate remedy under *Ward*, namely, remand to start the appellate timetable running again so that he can file a motion for new trial to build a record to substantiate appellant's claims of ineffective assistance of counsel. *See Smith*, 17 S.W.3d at 662; *Oldham*, 977 S.W.2d at 368; *Ward*, 740 S.W.2d at 800.

I would abate the appeal and remand the cause to the trial court with instructions that the court reset the appellate timetables. I would not use this occasion to revisit our holding in *Jack I* because I do not believe that issue is properly before us, and, therefore, the majority opinion is advisory.

TERRY JENNINGS, Justice, dissenting.

The majority misstates the relief actually requested by appellant, James Hail Benson, misconstrues the statement that he made in his pro se notice of appeal, and then, in violation of the doctrine of stare decisis, proceeds to use this case to overrule and "abandon" the well-reasoned and six-year-old precedent of *Jack v. State*, 42 S.W.3d 291 (Tex.App.-Houston [1st Dist.] 2001, order) (*Jack I* ). In so doing, the

majority establishes in Texas jurisprudence a classic "catch–22," [1] which violates the Due Process Clause of the United States Constitution and the Due Course of Law provision of the Texas Constitution. *See* U.S. CONST. amend. XIV; TEX. CONST. art. I, § 19. Accordingly, I respectfully dissent.

### The Problem: A Legal Catch–22

Texas Courts have long noted that, in reviewing a criminal defendant's contention that he received ineffective assistance of counsel at trial, we look to the totality of the trial representation to determine the effectiveness of counsel, indulging a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance or trial strategy. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App.1999). A claim of ineffective assistance must be firmly supported in the record, *see id.*, and it can be extremely difficult to show that trial counsel's performance was deficient when there is no proper evidentiary record developed at a hearing on a motion for new trial. *See Johnson v. State*, 176 S.W.3d 74, 79 (Tex. App.-Houston [1st Dist.] 2004, pet. ref'd); *Sudds v. State*, 140 S.W.3d 813, 819 (Tex. App.-Houston [14th Dist.] 2004, no pet.) (citing *Bone v. State*, 77 S.W.3d 828, 833 (Tex.Crim.App.2002)).

This aptly demonstrates what the Texas Court of Criminal Appeals has long recognized, i.e., "[w]ithout doubt the hearing on a motion for new trial is a critical stage of the proceedings. It is the *only opportunity* to present to the trial court certain matters that may warrant a new trial, and to make a record on those matters for appellate review." *Trevino v. State*, 565

S.W.2d 938, 940 (Tex.Crim.App.1978) (quoted in *Jack I*, 42 S.W.3d at 292) (emphasis added). Texas courts have consistently held that "the time period for filing a motion for new trial is a critical stage of a criminal proceeding in which defendants are entitled to assistance of counsel." *Jack I*, 42 S.W.3d at 292 (citations omitted). Moreover, as acknowledged by the majority, "[w]hen a defendant is deprived of effective assistance of counsel during the period for filing a motion for new trial, the remedy is to reset the appellate time limits." *See Ward v. State*, 740 S.W.2d 794, 800 (Tex.Crim.App.1987); *see also Jack v. State*, 64 S.W.3d 694, 697 (Tex. App.-Houston [1st Dist.] 2002, order) (*Jack II*).

Accordingly, the Texas Court of Criminal Appeals has indicated that trial courts should appoint appellate counsel "*at the same time* that a defendant gives notice of appeal to ensure that a defendant's post trial rights and options are fully protected." *Jack v. State*, 149 S.W.3d 119, 122 n. 4 (Tex.Crim.App.2004) (*Jack III*). Under Texas Rule of Appellate Procedure 25.2(a)(2), a trial court should "enter the certification of appeal at the time of sentencing, and it is at that time, if an indigent defendant has the right to appeal and wishes to do so, the trial court will appoint counsel." *Id.* (citing TEX.R.APP. P. 25.2(a)(2)).

However, a serious problem arises when, as here, a case "sometimes slip[s] through the crack and, although notice of appeal was timely filed, appointment of appellate counsel was not made until long after" the date that the notice of appeal was filed. *Jack III*, 149 S.W.3d at 122 n. 4. In such cases, if the defendant wants to

---

1. "Catch–22" is defined as "a dilemma or difficult circumstance from which there is no escape because of mutually conflicting or dependent conditions." THE NEW OXFORD AMERI-

CAN DICTIONARY 270 (1st ed.2001). It originates from the title of the novel authored by Joseph Heller.

appeal his conviction on the ground that his trial counsel was ineffective, but the trial court does not appoint appellant counsel until after the deadline has past for filing a motion for new trial, the defendant will be precluded from presenting a meaningful appeal. He will not be able to present a proper evidentiary record developed at a hearing on a motion for new trial—all because of an administrative error made by the trial court. He will be caught up in a legal catch–22. It is this problem that we effectively addressed in *Jack I* and *Jack II*.

### Jack I & Jack II

In *Jack I*, the defendant's court-appointed appellate counsel filed a motion to abate the appeal and for leave to file an out-of-time motion for new trial. 42 S.W.3d at 292. She asserted that because the trial court appointed appellate counsel more than 30 days after the defendant was sentenced, the defendant was unrepresented by counsel during the 30–day period for filing a motion for new trial. *Id.* She also asserted that had she been timely appointed, she would have filed a motion for new trial, alleging ineffective assistance of trial counsel because trial counsel did not subpoena material witnesses. *Id.* Although we noted that everything in the record indicated that the defendant was not assisted by counsel during the 30–day critical stage for filing a motion for new trial, we recognized that the Texas Court of Criminal Appeals has previously held that "[w]hen a motion for new trial is not filed in a case, the *rebuttable* presumption is that it was considered by the appellant and rejected." *Id.* at 293 (quoting *Smith v. State,* 17 S.W.3d 660, 662 (Tex.Crim.App. 2000)); *Oldham v. State,* 977 S.W.2d 354, 363 (Tex.Crim.App.1998) (en banc) (emphasis added).

Obviously, a presumption is not truly rebuttable if one is not allowed an opportunity to rebut it. Accordingly, we held that an abatement was proper to "allow appellant the opportunity to rebut the rebuttable presumption" that he was effectively represented by counsel during the critical 30–day period for filing a motion for new trial. *Jack I,* 42 S.W.3d at 293 (citing Tex.R.App. P. 44.4, 43.6). In doing so, we expressly followed Texas Rule of Appellate Procedure 44.4, which provides:

> A court of appeals must not affirm or reverse a judgment or dismiss an appeal if:
>
> (1) the trial court's erroneous action or *failure or refusal to act prevents the proper presentation of a case to the court of appeals;* and
>
> (2) the trial court can correct its action or failure to act.

Tex.R.App. P. 44.4(a) (emphasis added). In such circumstances, we "must direct the trial court to correct the error" and "then proceed as if the erroneous action or failure to act had not occurred." Tex.R.App. P. 44.4(b). Moreover, Texas Rule of Appellate Procedure 43.6 provides that we "may make any other appropriate order that the law and nature of the case require." Tex.R.App. P. 43.6. We also relied on *McIntire v. State,* 698 S.W.2d 652, 662 (Tex.Crim.App.1985) (op. on reh'g) (abating to determine feasibility of hearing on three-year-old motion for new trial) and *Crosson v. State,* 36 S.W.3d 642, 294 (Tex. App.-Houston [1st Dist.] 2000, order) (abating for suppression hearing, listing many similar situations for which abatement has been ordered).

Accordingly, we then abated the appeal and remanded the cause to the trial court for a hearing to determine whether appellant had counsel and whether he received effective assistance of counsel during the

30–day period for filing a motion for new trial. *Jack I,* 42 S.W.3d at 294.

Subsequently, in *Jack II,* we noted that the trial court's findings upon the abatement and remand defeated the presumption that the defendant had considered and rejected filing a motion for new trial during the critical 30–day period. 64 S.W.3d at 696. We also noted that the proper remedy was to abate the appeal and remand the cause to recommence the time period for filing a new trial motion. *Id.* at 697. We did so, without disturbing the trial court's judgment, and ordered that upon remand, the appellate timetables were to begin anew, starting from the date of our order. *Id.* We explained that if the trial court granted the new trial motion, the appellate record was to be supplemented with that order, and the defendant's appeal would be dismissed. *Id.* We also explained that if the trial court overruled the new trial motion, the record would be supplemented with that order and the record of any hearing held on the motion, and the parties would be permitted to brief any issues related to the overruled motion. *Id.*

In regard to the remand after *Jack I,* as noted by Justice Cohen in his concurring opinion:

> No judicial resources were wasted in this case. The trial judge signed his findings 38 days after our abatement order issued. The record got here three weeks later. *The abatement hearing covers only six pages of testimony and lasted only minutes.* The defendant answered seven questions; trial counsel answered five. The trial judge commented that this was a "simple record" to make.

*Id.* at 698 (Cohen, J., concurring) (emphasis added). More importantly, this Court recognized and effectively and efficiently followed Rules 44.4 and 43.6 and case law to abate the case, ensuring that the defendant was able to timely and properly present his appeal to this Court.

### The Issue Presented

In overruling *Jack I,* the majority asserts that appellant "asks that we abate the present appeal and remand the cause to the trial court for an evidentiary hearing to determine whether he received effective assistance of counsel during the period for filing a motion for new trial." *See Jack I,* 42 S.W.3d at 294. However, appellant seeks no such relief at all.

Unlike the defendant in *Jack I,* here, appellant did not file a motion to abate his appeal for the opportunity to rebut the "rebuttable presumption" that he had considered and rejected filing a new trial motion. Rather, appellant, in his August 25, 2005 brief, articulates his point of error as follows:

> A new trial should be granted because of the violation of Appellant's right to effective assistance of counsel, when the trial court neglected to give appellant appointed counsel in order to assist the Appellant for timely filing of a motion for new trial and evidentiary hearing thereon.

Although appellant cites both *Jack I* and *Jack II* under this point, the only request made by appellant of this Court is that

> the cause be REMANDED back to the trial court, with instructions for the trial court *to allow Appellant 30 days to file a Motion for New Trial* to more fully develop his claim of grounds of ineffective assistance of counsel, and to actually conduct an evidentiary hearing 75 days from the date of the filing of any motion. . . .

*See Jack II,* 64 S.W.3d at 697 (emphasis added).

Appellant in no way argues for an abatement under *Jack I* "to determine whether

he received effective assistance of counsel during the period for filing a motion for new trial" as represented by the majority. In fact, appellant expressly argues that he is entitled to a remand to present his new trial motion, *see Jack II*, because "the instant records supply more than sufficient evidence to rebut any presumption of counsel" after sentencing. In its September 26, 2005 brief, the State argues that appellant "presents nothing for review" and, alternatively, that appellant has simply failed to rebut the rebuttable presumption. Thus, the issue of whether or not to overrule and abandon *Jack I* is not properly before this Court.[2]

In support of his argument that the record, as it now stands, provides enough information to rebut the rebuttable presumption that he considered a new trial motion and rejected it, appellant refers to his pro se notice of appeal, dated July 29, 2004, upon which he wrote:

> Appellant, an indigent, prays for the setting of APPEAL BOND, and NOT BEING REPRESENTED BY COUNSEL SINCE SENTENCING also prays for the APPOINTMENT OF APPELLATE COUNSEL.
> RESPECTFULLY SUBMITTED, JAMES BENSON, DEFENDANT, PRO SE.

Rather than reading appellant's pro se notice of appeal literally as a simple statement of fact, i.e., that he in fact did not have legal representation "SINCE SENTENCING," the majority misconstrues the statement as "conclusory." However, "conclusory" is defined as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based." BLACK'S LAW DICTIONARY 284 (7th ed.2001). Here, appellant's statement that

he had not been represented by counsel "SINCE SENTENCING" is an affirmative statement of fact—it is not expressing a factual inference.

The majority faults appellant for not presenting this Court with a record showing that he (1) asserted that his "trial counsel failed to consult with and fully advise appellant about the meaning and effect of the judgment rendered by the trial court"; (2) alleged that his "trial counsel failed to consider or discuss the option of filing a motion for new trial, or that he refused to file one, or even that appellant made such a request"; and (3) argued that "trial counsel failed to express his professional judgment as to possible grounds for appeal and their merit, or failed to delineate advantages and disadvantages of appeal." It concludes that because appellant did not make these representations to the trial court or to this Court, "the record here is insufficient to rebut the presumption that trial counsel advised appellant about his appellate rights, rules, and odds of success" and that "appellant's conclusory statement is [in]sufficient to rebut the presumption that trial counsel continued to effectively represent him."

How could appellate counsel make such a record after this Court has now, in overruling and abandoning *Jack I*, deprived him of the ability to rebut the rebuttable presumption that appellant considered and rejected filing a new trial motion? He cannot. Appellant is caught in this Court's catch–22. How would an indigent defendant, not represented by counsel "SINCE SENTENCING," possibly know to, or how to, make such a record in the trial court for consideration by this Court? He could

**2.** In fact, as noted by the majority, this Court, after the case had already been submitted on May 23, 2006, ordered sua sponte an abatement as used in *Jack I* on July 19, 2006. Only then did the State challenge this Court's sua sponte order.

not. Again, he is caught in this Court's catch-22.[3]

Moreover, although such representations certainly may serve to rebut the rebuttable presumption that an appellant has considered and rejected a new trial motion when one is not filed in a case, the law does not require that these specific representations be made or proved to rebut the presumption. In support of its conclusions that these specific representations are required to rebut that presumption, the majority relies on *Ex Parte Axel*, 757 S.W.2d 369, 374 (Tex.Crim.App.1988) and *Burnett v. State*, 959 S.W.2d 652, 659 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd). Neither case is applicable here.

The Court of Criminal Appeals in *Ex Parte Axel* held that trial counsel "has the duty, obligation and responsibility to consult with and fully to advise his client concerning meaning and effect of the judgment rendered by the court, his right to appeal from that judgment, the necessity of giving notice of appeal and taking other steps to pursue an appeal, as well as expressing his professional judgment as to possible grounds for appeal and their merit, and delineating advantages and disadvantages of appeal." 757 S.W.2d at 374. Because the defendant's trial counsel effectively abandoned him, the court found that "in reality this presumptively indigent applicant did not receive any practical assistance of counsel in protecting and preserving his appellate rights." *Id.* Thus, it concluded that the defendant had been denied effective assistance of counsel on appeal in violation of his due process rights and held that he was "entitled to an out of time appeal." *Id.* at 374–75. Because it was not an issue in the case, the court did not even consider or discuss the rebuttable presumption that an appellant has considered and rejected a motion for new trial when one is not filed in a case.

*Burnett* is substantively and easily distinguishable because the pro se notice of appeal in issue, which was apparently filed by the defendant's mother, stated that "appellant was told by his attorney that appellant needed to 'write this letter' ... to appeal the length of sentencing." 959 S.W.2d at 654–55. Unlike the instant case, the defendant did not inform the trial court that he had not been represented by counsel "SINCE SENTENCING."

The bottom line is that the majority's misconstruction of appellant's statement as "conclusory" cannot be justified in light of appellant's affirmative and unequivocal statement that he was in fact not represented by counsel "SINCE SENTENCING." In fact, as noted by the majority, the trial court did not even certify appellant's right to appeal until January 14, 2005, almost five months after appellant filed his pro se notice of appeal. Moreover, this Court actually had to abate the appeal to order the trial court to appoint appellate counsel. As acknowledged by the majority, the trial court on remand stated on the record, "Well, I don't know why you weren't appointed a lawyer on appeal because you should have been appointed a lawyer...." Here, as in *Ex Parte Axel*, appellant has demonstrated that he was effectively abandoned by trial counsel.

---

3. As Joseph Heller wrote in Catch–22:
 [Captain] Yossarian was moved very deeply by the absolute simplicity of this clause of Catch–22 and let out a respectful whistle. "That's some catch, that Catch–22," he observed.

 "It's the best there is," Doc Daneeka agreed.
 Joseph Heller, Catch-22 46 (Simon & Schuster 2004) (1961).

Nevertheless, despite the record before us, including our own actual abatement and remand of the case ordering the trial court to appoint appellate counsel, the majority actually holds that "the record shows that appellant was officially represented by counsel at all times in the litigation, and appellant has failed to overcome the presumption that counsel was acting effectively at all times." Then, rather than addressing appellant's actual point of error and argument, the majority uses its extraordinary holding to revisit and overrule *Jack I* by "abandon[ing] the abatement procedure used in *Jack I.*"

### Welcome Back *Jack*

Abandoning abatement as used in *Jack I* and the majority's reasoning in doing so is problematic for a number of reasons. First, this Court has no authority to ignore the requirements of Rule 44.4 as outlined above. If a trial court's failure to act "prevents the proper presentation of a case" on appeal and the trial court can correct the error, an appellate court "*must* direct the trial court to cure the error*.*" TEX.R.APP. P. 44.4 (emphasis added). As noted by the Court of Criminal Appeals in *Jack III,* trial courts should appoint appellate counsel "*at the same time* that a defendant gives notice of appeal to ensure that a defendant's post trial rights and options are fully protected." 149 S.W.3d at 122 n. 4. Failure to do so necessarily prevents a defendant from properly presenting his appeal in violation of the Due Process Clause of the United States Constitution and the Due Course of Law provision of the Texas Constitution. *See* U.S. CONST. amend. XIV; TEX. CONST. art. I, § 19.

Second, in regard to the majority's representation that "we added a step to the appellate process," in *Jack I,* again, Rule 44.4 actually requires that we direct the trial court to cure any error that "prevents the proper presentation of a case." TEX. R.APP. P. 44.4. Moreover, even the majority, citing *Ward v. State,* recognizes that "[w]hen a defendant is deprived of counsel during the period for filing a motion for new trial, the remedy is to reset the appellate time tables." *See* 740 S.W.2d 794 (Tex.Crim.App.1987). Following Rule 44.4 and established precedent is not "adding a step" to the appellate process.

Third, the majority's conclusion that the Court of Criminal Appeals "criticized" and "disapproved" of abatement as used in *Jack I* and "questioned our legal authority" to abate is unfounded. In the three years since the Court of Criminal Appeals issued its opinion in *Jack III,* this Court has continued to abate cases under *Jack I* when necessary. Only now has this Court come to the conclusion, under "the pronouncements of our superior court," that the precedential value of *Jack I* and *Jack II* has been abrogated. Yet, in *Jack III,* the court merely held that "[r]egardless of the validity of the procedure ordered by the court of appeals, its decision turned out to be an interlocutory order, not a final one." 149 S.W.3d at 125. Thus, it dismissed the State's petition for discretionary review and remanded the case to us for further proceedings. *Id.* It is well-settled law that "[w]hen a party attempts to appeal a non-appealable interlocutory order, appellate courts have no jurisdiction except to declare the interlocutory nature of the order and dismiss the appeal." *Lipshy Motorcars, Inc. v. Sovereign Assocs., Inc.,* 944 S.W.2d 68, 70 (Tex.App.-Dallas 1997, no writ); *see Yancey v. Jacob Stern & Sons, Inc.,* 564 S.W.2d 487, 488 (Tex.Civ. App.-Houston [1st Dist.] 1978, no writ). After ascertaining that dismissal was proper, it would have been improper for the court to issue any such advisory opinion. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 444 (Tex.1993). Tex-

as courts simply have no jurisdiction to render advisory opinions. *See id.*

It is true that in discussing the issue presented in the State's petition for discretionary review and in laying out the procedural posture of the case, the Court in *Jack III* did quote the criticism in the opinions of the three justices on our Court who dissented in *Jack II*. 149 S.W.3d at 122; *see Jack II*, 64 S.W.3d at 698 (Taft, J., dissenting) (Nuchia, J., joined by Radack & Taft, JJ., dissenting to denial of en banc reconsideration). However, the court also quoted Justice Cohen's concurring opinion, acknowledging the problem that we addressed in *Jack I*. 149 S.W.3d at 121–22 n. 4. It is also true that the court in *Jack III* asserted that we did not reveal the rule upon which we relied in abating the case. 149 S.W.3d at 121. However, in *Jack I*, we clearly stated that we were following Rules 44.4 and 43.6 and case law in initially abating the case. 42 S.W.3d at 293. Also, the court in *Jack III* did note that "the State is correct" that it, in the words of the State, "has thrice reviewed this out-of-time motion for new trial abatement procedure." 149 S.W.3d at 123; *see Smith*, 17 S.W.3d at 662; *Oldham*, 977 S.W.2d at 363; *Price v. State*, 826 S.W.2d 947, 947 (Tex.Crim.App.1992). However, the court emphasized that in these cases it held that abatement was invalid only "under the cited rule of appellate procedure." *Jack III*, 149 S.W.3d at 124. In *Jack I*, we noted that the Court in *Oldham* limited its holding on the issue to the use of Rule 2(b):

> Our holding on this issue is strictly *limited to the use of Rule 2(b)*. *We should not be understood as restricting court of appeals' power to abate an appeal and remand a case under authority other than Rule 2(b)*. When judicial resources can be conserved in the interest of justice, we encourage the courts of appeals to adopt and continue to use methods for

resolving issues sooner rather than later, as long as such methods are legally endorsed.

*Jack I*, 42 S.W.3d at 293 (quoting *Oldham*, 977 S.W.2d at 360) (emphasis added). Accordingly, in *Jack I*, we expressly did not rely on Rule 2(b) in initially abating the case. *Id.* at 294. Thus, *Price, Oldham*, and *Smith* are simply inapplicable.

Fourth, in regard to the assertion that abatement as used in *Jack I* has "the opposite effect" of conserving "judicial resources," this case serves to illustrate precisely why that statement is patently false. For example, appellate counsel could have, after his appointment on April 15, 2005, filed in this Court a *Jack I* motion to abate to allow him the opportunity to rebut the rebuttable presumption that appellant considered and rejected filing a new trial motion. We certainly could have abated the case for a "minutes"-long hearing to determine the issue and then, if necessary, ordered that he be allowed to file his new trial motion. Had the trial court granted the new trial motion, we would have immediately dismissed this appeal. Had the trial court denied the motion, appellant could have timely and meaningfully presented his point in this appeal. This could have been accomplished well before appellant's brief was filed on August 25, 2005.

As noted above, appellant requested no such relief. Thus, this Court should have timely addressed the issue when the case came at issue on September 26, 2005, after the State filed its brief. We should have, under *Jack II* and *Ward*, sustained appellant's first issue and ordered that appellant be allowed to file his new trial motion. Again, had the trial court granted the motion, we would have immediately dismissed the appeal. Had the trial court denied the motion, appellant could have timely and meaningfully presented his point in this

appeal. This could have been accomplished before this case was submitted on May 23, 2006.

However, rather than handle our business in a timely and efficient manner, the majority now suggests that appellant later "develop a record of ineffective assistance of trial counsel or lack of trial counsel" through a subsequent and separate "post-judgment phase through habeas corpus proceedings." *See* Tex.Code Crim. Proc. Ann. art. 11.07 (Vernon 2005). Under article 11.07, appellant may not even bring such a post-conviction writ until after his conviction becomes final, i.e., after he has exhausted his appeals. *See id.* at § 3. Also, he would not have the right to counsel to assist him in such a habeas corpus proceeding. *Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987). Thus, the majority's suggestion rings hollow. Not only does it create yet another more burdensome obstacle for appellant, it would make another court reinvent the wheel by doing the work that we could have accomplished after a "minutes"-long hearing. More importantly, as noted below, appellant has a right to present his appeal "at a *meaningful time* and in a *meaningful manner.*" *Ward,* 740 S.W.2d at 800 (citing *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)) (emphasis added).

Finally, in regard to the notion that abating a case under *Jack I* might be "an admirable exercise in equity," it must be stated that such abatements are not merely equitable, but actually required under the Due Process Clause of the United States Constitution and the Due Course of Law provision of the Texas Constitution. *See* U.S. Const. amend. XIV; Tex. Const. Art. I, § 19. It is more than unseemly for a court of law to create a catch–22, precluding a defendant from properly presenting his appeal because, through no fault of his own, his case "slipped through a crack" when the trial court untimely appointed his appellate counsel. Justice Felix Frankfurter wrote that "[f]airness of procedure is 'due process in the primary sense.'" *Joint Anti–Fascist Ref. Comm. v. McGrath,* 341 U.S. 123, 161, 71 S.Ct. 624, 643, 95 L.Ed. 817 (1951). He further emphasized that

> Due process is perhaps the most majestic concept in our whole constitutional system. While it contains the garnered wisdom of the past in assuring fundamental justice, it is also a living principle not confined to past instances.

*Id.* at 174, 71 S.Ct. at 650.

In *Evitts v. Lucey,* the United States Supreme Court held that there is a constitutional guarantee of effective assistance of counsel on appeal in every criminal prosecution. 469 U.S. 387, 395–96, 105 S.Ct. 830, 836, 83 L.Ed.2d 821 (1985). In *Evitts,* although the defendant's retained counsel filed a notice of appeal, brief, and record, he failed to submit a statement of appeal required by the Kentucky Rules of Appellate Procedure. *Id.* at 389, 105 S.Ct. at 832. After the Kentucky Court of Appeals dismissed the defendant's appeal for failure to file a statement of appeal, the Supreme Court affirmed the granting of a writ of habeas corpus because the defendant had been denied effective assistance of counsel on appeal. *Id.* at 390, 405, 105 S.Ct. at 832–33, 841. The Supreme Court emphasized:

> In bringing an appeal as of right from his conviction, a criminal defendant is attempting to demonstrate that the conviction, with its consequent drastic loss of liberty, is unlawful. To prosecute the appeal, a criminal appellant must face an adversary proceeding that—like a trial—is governed by intricate rules that to a layperson would be hopelessly forbid-

ding. An unrepresented appellant—like an unrepresented defendant at trial—is unable to protect the vital interests at stake. To be sure, respondent did have nominal representation when he brought this appeal. But nominal representation on an appeal as of right—like nominal representation at trial—does not suffice to render the proceedings constitutionally adequate; a party whose counsel is unable to provide effective representation is in no better position than one who has no counsel at all.

*Id.* at 396, 105 S.Ct. at 836.

Thus, the Supreme Court held that appellate counsel's failure to file the statement of appeal constituted a lack of effective assistance of counsel on appeal in violation of the Due Process Clause of the Fourteenth Amendment. *Id.* at 397–98, 105 S.Ct. at 836–37. The Court noted, "counsel's failure was particularly egregious in that it essentially waived respondent's opportunity to make a case on the merits; it is difficult to distinguish respondent's situation from that of someone who had no counsel at all." *Id.* at 395, n. 6, 105 S.Ct. at 835, n. 6.

Relying on *Evitts,* the Texas Court of Criminal Appeals, in *Ward,* noted that the failure of appellate counsel to comply with a simple procedural rule operated to deny the defendant "an opportunity at a *meaningful time* and in a *meaningful manner* to present his appeal." 740 S.W.2d at 800 (citing *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). It noted that the absence of a statement of facts severely limited appellate review and rendered the defendant's "appeal a 'meaningless ritual.'" *Id.* (quoting *Evitts,* 469 U.S. at 394, 105 S.Ct. at 834).

In *Ward,* although the defendant's trial counsel remained the defendant's counsel on appeal because he failed to withdraw, counsel actually believed that his representation of the defendant ceased after trial. *Id.* The court explained that "as a practical matter," the defendant "received *no* assistance as to the substantive issues that may be presented on appeal." *Id.* Accordingly, the court held that the defendant had been denied his right to effective assistance of counsel on appeal in violation of his Fourteenth Amendment due process rights under the Federal Constitution and article one, section 19 of the Texas Constitution. *Id.* It reversed the court of appeals decision to the contrary and remanded the case to that court "with instructions to *abate* the appeal." *Id.* (emphasis added). Further, it ordered that "all applicable time limits on appeal shall be calculated as if the notice of appeal were given on the date of the overruling of the final motion for rehearing of this Order, or on the 16th day after rendition of this Order if no motion for rehearing is filed." *Id.*

Here, the record conclusively establishes that appellant, "SINCE SENTENCING," was not represented by counsel. The trial court did not even certify appellant's right to appeal until almost five months after appellant filed his pro se notice of appeal, and we had to actually abate the appeal to order the trial court to appoint appellate counsel. The trial court's failure to timely appoint appellate counsel precluded appellant from filing a new trial motion and properly presenting the issue of whether his trial counsel provided effective assistance, i.e., it denied appellant "an opportunity at a *meaningful time* and in a *meaningful manner* to present his appeal." *Ward,* 740 S.W.2d at 800. Thus, "as a practical matter," appellant "received *no* assistance" as to the substantive issue that he seeks to present on appeal. *Id.*

Accordingly, this Court should sustain appellant's first point of error, abate the appeal, and remand the cause to recom-

mence the time period for filing a motion for new trial. *Id.; Jack II*, 64 S.W.3d at 697. On remand, the appellate time tables should begin anew. *Ward*, 740 S.W.2d at 800; *Jack II*, 64 S.W.3d at 697. This Court's failure to do so, and its abandonment of abatement as used in *Jack I*, violates the Due Process Clause of the United States Constitution and the Due Course of Law provision of the Texas Constitution. *See* U.S. CONST. amend. XIV; TEX. CONST. art. I, § 19.

### Conclusion

Here, appellant's case "slipped through a crack," and the trial court's failure to timely appoint appellant counsel deprived him of the ability to present his appeal in a "meaningful time" and in a "meaningful manner." Rather than recognizing the simple fact that the record, as it stands, demonstrates that appellant was not represented by counsel during the time period for filing a motion for new trial, the majority misconstrues as "conclusory" the statement of appellant made in his pro se notice of appeal that he had not been represented "SINCE SENTENCING." It then misstates the relief that appellant is seeking, and, in violation of the doctrine of stare decisis, uses this case to overrule and abandon the well-reasoned and six-year-old precedent of *Jack I*.

The majority ignores Rules 44.4 and 43.6 and *Evitts* and *Ward*. In effect, it creates a legal catch–22 in violation of both the Due Process Clause of the United States Constitution and the Due Course of Law provision of the Texas Constitution. *See* U.S. CONST. amend. XIV; TEX. CONST. Art. I, § 19. Here, the words of Justice Robert H. Jackson are most appropriate:

> Let it not be overlooked that due process of law is not for the sole benefit of the accused. It is the best insurance for the Government itself against those blunders which leave lasting stains on a system of justice....

*Shaughnessy v. United States*, 345 U.S. 206, 224–25, 73 S.Ct. 625, 635, 97 L.Ed. 956 (Jackson, J., dissenting).