Opinion issued February 9, 2012.


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In The

Court
of Appeals

For The

First
District of Texas

————————————

NO.
01-10-00869-CR

———————————

Larry E. Moland, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 185th District
Court 

Harris County, Texas



Trial Court Case No. 1241429

 



 

MEMORANDUM OPINION

Larry E. Moland was charged by indictment
with capital murder arising out of the robbery and shooting of Tekayes Stewart.
 A jury found Moland guilty of capital
murder and the court sentenced him to life in prison without the possibility of
parole.  See Tex. Penal
Code Ann. § 19.03(a)(2) (West 2011). 
On appeal, Moland
argues that the trial court erred by excluding witness testimony and by sustaining
an objection made by the State during Moland’s closing argument, that the
punishment assessed was cruel and unusual under both federal and Texas law, and
that the statute under which he was sentenced violates the separation of powers
doctrine.  We affirm.

Background

On October 4, 2009, Stewart, a nineteen-year-old
African American male, asked his friend Brent Woods to drive him to purchase firearms,
including two AK-47s, from Moland.  The
gun deal previously had been arranged by Alejandro Rios and Mark Cornman, who met
with Moland a few days before the shooting and set up the transaction.  On the day of the shooting, Stewart, Woods,
and Rios met Cornman and two other men, including Georgy Bikov, in a Wingstop
parking lot.  Cornman directed Stewart to
follow Bikov’s car to a nearby apartment complex.  When the men arrived at the complex, they
waited until Cornman received a call from Moland before Stewart and Cornman
walked to an apartment that Moland had once occupied.  Woods and Rios remained in the car.

According to Cornman, when he and Stewart arrived at
the apartment, Moland was already waiting inside.  After Stewart entered the apartment and locked
the door behind him, Moland pulled out a gun, showed it to Stewart, and then used
the gun to hit Stewart in the face.   Stewart
fell backwards and Moland began to shoot Stewart.  Cornman testified that he ran from the
apartment complex to Bikov’s house and waited outside until Bikov arrived.  Cornman called Rios and repeatedly stated “he
got shot” but did not provide any additional details. 

After Cornman’s phone call to Rios, Rios and Woods walked
to the apartment and saw a group of people standing outside.  Woods testified that the bystanders said that
they had heard gunshots and that there was a boy wearing a hat in the kitchen.  Woods and Cornman went into the apartment and found
Stewart, suffering from multiple gunshot wounds and lying on the floor of the
kitchen with his pants pulled down. 
Rios, who was in possession of illegal drugs at the time, fled to the parking
lot.  According to Rios, when he reached
the parking lot he saw both Bikov and Cornman inside Bikov’s car.  Rios testified that Cornman looked scared and
that either during their meeting in the parking lot or later on the phone,
Cornman told him that a large African-American man with thick braids started
beating Stewart outside of the apartment, and that Cornman heard gunshots as he
ran from the apartment.  Rios testified
that when he spoke to Cornman later in the day Cornman said that he had not
seen the shooter’s face.

Hector Cruz testified that he was smoking marihuana in
the apartment across the hall at the time of the shooting.  Cruz testified that after he and his friends
heard the shots, they went into the apartment and found Stewart.  Cruz testified that Stewart’s pants were
pulled low when Cruz found him and that Cruz did not touch the body.  Although Woods testified that Stewart had
over $1,000.00 in his pocket earlier in the day, and Rios testified that he had
seen Stewart count a large amount of money and put it in his pocket before the
meeting with Moland, no money was found on Stewart’s body.  

A couple of weeks after the shooting, the police questioned
Cornman.  Cornman told the police the
same story that he initially told Rios: that Stewart had been shot by a
300-pound African-American man with braids, a description that, according to
Rios, did not match Moland’s appearance. 
Cornman later identified Moland in a photograph line-up and wrote “the
one who shot the guy” next to Moland’s picture.  At trial, Cornman testified that he initially
lied about the appearance of the shooter because Moland had called him after
the shooting and threatened to kill Cornman if the shooting was traced back to
Moland. 

Moland was arrested and charged with capital murder
for the death of Stewart in the course of a robbery.  

Exclusion of Bystander’s Statements

Moland argues that the trial court
erred by excluding as hearsay the testimony of a witness, Twauna Collier, who
would have testified about statements made to her at the scene by a deaf bystander,
which were simultaneously translated from sign language to English by the bystander’s
young nephew.  Citing Saavedra v. State, 297 S.W.3d 342 (Tex.
Crim. App. 2009), Moland asserts that the bystander’s statements were
admissible as an excited utterance or present sense impression and that the
translation by the bystander’s nephew did not add a layer of hearsay because
the bystander authorized the boy to speak for her or adopted him as her agent for
purposes of the translation.  Moland also
claims the exclusion of this testimony violated his Sixth Amendment right to
present a complete defense.  We address
these issues in turn.

A.  
Were the bystander’s translated statements inadmissible hearsay?

1.     Standard of review

We review a trial court’s decision
to admit or exclude evidence under an abuse of discretion standard.  Martinez
v. State, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010), cert. denied, 131 S. Ct. 2966 (2011); Saavedra, 297 S.W.3d at 349; Zuliani
v. State, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003).  A trial court abuses its discretion in this
regard if its determination “lies outside the zone of reasonable disagreement.”
Martinez, 327 S.W.3d at 736.  

2.     Applicable law

Hearsay is an out of court statement offered to prove the truth of the
matter asserted.  Tex. R. Evid. 801.  Hearsay
statements are not admissible unless they fall under a recognized exception to
the hearsay rule.  Tex. R. Evid. 802, 803.  To be properly admissible, each level of
hearsay must fall under an exception.  See Crane v. State, 786 S.W.2d 338, 353–54 (Tex.
Crim. App. 1990).  

In the context of translations, the Court of Criminal Appeals has held
that an interpreter’s translation does not add a layer of hearsay if the
interpreter is acting as a “language conduit,” translating the statement of one
who has authorized him to translate or adopted the interpreter as his agent.  Saavedra, 297
S.W.3d at 346.  To determine whether the interpreter was acting
as an agent, courts consider the following four factors: (1) who supplied the
interpreter, (2) whether the interpreter had a motive to mislead or distort, (3)
the qualifications and language skills of the interpreter, and (4) whether
actions taken subsequent to the translated statement were consistent with the
statement.  Id. at 348 (citing United
States v. Nazemian, 948 F.2d 522, 527 (9th Cir. 1991)).  As the Court of Criminal Appeals noted in Saavedra, these four factors go not only
to the question of whether the interpreter was acting as an agent and
authorized to speak, but also to “the ultimate reliability of the proffered
evidence—always a
core consideration in fashioning any exception to the general rule against
admitting hearsay evidence over objection.” 
Id. at 349.  No one factor is either necessary or
sufficient to establish an interpreter acted as a language conduit; rather, the
factors are related and must be considered together.  See Saavedra v. State, No. 05-06-01450-CR, 2010 WL 2028111, at *3–4 (Tex. App.—Dallas May 24, 2010,
no pet.) (mem. op., not designated for publication) (citing Saavedra, 297 S.W.3d at 349)).  Finally, the proponent of
the evidence bears the burden of demonstrating to the satisfaction of the trial
court that, after taking these factors into account, the out-of-court
translation is admissible.  Saavedra, 297 S.W.3d at 349.

3.     Analysis

Collier lived in the apartment complex where the shooting occurred.  She testified that, around the time of the
shooting, she saw three men, including Moland, run by her apartment.  She also saw a group of men load a two-foot
long, black bag into a truck a few hours after the shooting.  Shortly after seeing the men with the black
bag, while standing on a staircase near the crime scene, Collier was approached
by woman who looked upset and whom Collier believed to be deaf. According to
Collier, the woman and her nephew, whom Collier estimated was twelve years old,
were communicating through sign language. 
Collier testified that the woman pointed to the same group of men that
Collier earlier had seen with the black bag and said, audibly, “that guy.”  Collier testified that the group to which the
woman pointed was comprised of a few Hispanic men and one African American man,
but Moland was not among them.  

When Moland’s counsel sought to elicit additional statements the woman
signed to her nephew, as translated by the nephew into English for Collier, the
State objected on hearsay grounds.  Moland
argued that the woman’s statements were admissible as an excited
utterance.  The State responded that the
nephew’s translation created a second layer of inadmissible hearsay.  The trial court sustained the objection.  

In his bill of exception, Moland established through Collier’s testimony outside
of the presence of the jury that Collier had seen the deaf woman around the
apartment complex before.  While she had
not seen the boy with the woman before that day, she believed the boy was the nephew
of the woman because the boy told her so. 
Collier then related the deaf woman’s statements, as they had been translated
to Collier by the boy: she and another lady “was passing by and seen [sic] one
of the gentlemen with a gun” and “it was a black guy.”  According to Collier, the woman also said the
Hispanic men that were standing there with the black man “all had something to
do with it.”  Collier testified that it
appeared to her that the boy was able to translate from sign language to
English, but she also acknowledged that she did not understand sign language
and did not know if the nephew was translating accurately.  

Moland argued at trial, as he does on appeal, that
these excluded translated statements are not hearsay.  Specifically, Moland contends that the first
layer of hearsay—the woman’s statements to her nephew, which she made in sign
language—are admissible under the excited utterance exception to the hearsay
rule.[1]  Moland asserts, with respect to the nephew’s
translation, that it is not hearsay because the woman adopted her nephew as her
interpreter or authorized her nephew to speak for her.  See
Saavedra, 297 S.W.3d at 348.  Moland
argues that three of the four Saavedra
factors weigh in favor of admissibility and that the trial court abused its
discretion in excluding the translated statements.  We thus turn to the Saavedra factors.

i.                  
Who supplied the interpreter?

The record does not contain any evidence suggesting that the nephew who
translated the woman’s statements to Collier was provided by either party.  There is no indication that the nephew or the
woman knew or had any relationship with Moland or the State, much less that
they were communicating with Collier at the behest of either of them.  

While Moland contends that this factor weighs in favor of admissibility
because the woman “supplied” her nephew as her interpreter, this court previously
has found that a relative of a witness who happens to be on location and serves
as an interpreter is not supplied by either party for purposes of this four-factor
analysis.  Driver v. State, No. 01-07-00386-CR, 2009 WL 276539, at *6 (Tex.
App.—Houston [1st Dist.] Feb. 5, 2009, pet. ref’d) (mem. op., not designated for
publication) (finding relative of non-English-speaking wife of complainant who
was at complainant’s wife’s home at time of police interview and translated
interview was not supplied by either party); see also Cassidy v. State, 149 S.W.3d 712, 715 (Tex. App.—Austin
2004, pet. ref’d) (interpreter not provided by either party where he was coworker
visiting accident victim when police arrived for interview).  Accordingly, we conclude this factor is
neutral, weighing neither in favor of nor against admissibility.

ii.                
Did the interpreter have any
motive to mislead or distort?

We agree with Moland’s contention, which the State does not dispute, that
nothing in the record suggests that the boy had a motive to mislead or distort
his aunt’s statements.  Nothing in the record
shows that the nephew was motivated to provide anything but an accurate
translation in English to Collier.  Accordingly,
we conclude this factor weighs in favor of admitting the testimony.  

iii.             
What are the interpreter’s qualifications and language skills?

 

There is scant evidence regarding the boy’s language skills or qualifications
as an interpreter.  Collier testified
that it appeared to her that the woman and her nephew were communicating in
sign language.  But she also stated that
she did not know sign language and had no idea if the nephew was translating
accurately.  There is no other evidence
in the record regarding the boy’s qualifications or language skills.  The trial court was concerned that this
undermined the reliability of the translation.  We agree with the trial court that this factor
weighs against admissibility.  See Saavedra, 2010 WL 2028111, at *3–4 (although
translator, a records clerk in the police department, was on approved list of
department translators, third factor weighed against admissibility because no
specific details on background of translator or requirements for placement on approved
list were offered); cf. Diaz v. State,
No. 08-07-00323-CR, 2010 WL 109703, at *8 
(Tex. App.—El Paso Jan. 13, 2010, pet. dism’d) (mem. op., not designated for
publication) (finding CPS investigator who acted as interpreter sufficiently
skilled to translate Spanish to English where record demonstrated that Spanish
was her first language and was spoken fluently in her household and she had
taken Spanish in grade school, high school and college); Driver, 2009 WL 276539, at *6 (record demonstrated family member
who served as interpreter had demonstrated her language abilities by
translating Cambodian to English in two other police interviews of witness).  

iv.             
Were actions taken subsequent to the translated statement
consistent with the statement as translated?

 

The record contains no evidence of any action taken subsequent to the making
of the statements at issue that would reveal any consistency or inconsistency with
the translated statements.  For example,
there is no indication that the woman or the boy made any subsequent statement
to the police or any other witness.  And
neither of them testified at trial.  We
find this factor neutral, weighing neither for nor against admissibility.

Having examined all four Saavedra
factors, we find the first and fourth factors are neutral, the second weighs in
favor of admissibility and the third weighs against admissibility.  On this record we cannot conclude that the
trial court abused its discretion in finding that Moland failed to carry his
burden to establish the admissibility of the translated statements.  See
Saavedra, 297 S.W.3d at 349 (noting proponent of evidence bears burden to
persuade trial court on admissibility); cf.
Saavedra, 2010 WL 2028111, at *4 (abuse of discretion to admit evidence
where the record did not demonstrate declarant authorized police department
employee to speak for him or that employee, despite being on the approved list
of translation, was reliable translator); Driver,
2009 WL 276539, at *6 (no abuse of discretion where trial court admitted
translation where first and second factors were neutral, translator
demonstrated language abilities in two other police interviews, and witness whose
statements were translated was subject to cross-examination at trial and
repeated her identification of appellant through interpreter).  

B.  
Did the
exclusion of the bystander’s statements violate Moland’s right to present a
complete defense?

 

Moland contends that even if the translated statements were inadmissible
under the Texas Rules of Evidence, they should have been admitted because they were
“necessary to establish a defense theory that someone other than [Moland]
either shot Stewart, or stole Stewart’s money.” 
Relying on Holmes v. South
Carolina, Moland contends the exclusion of some of Collier’s testimony,
including the hearsay statements by the neighbor that she had seen one of the men
standing near the crime scene with a gun and that “they all had something to do
with it,” violated his constitutional right to present a complete defense.  Holmes
v. South Carolina, 547 U.S. 319, 126 S. Ct. 1727 (2006).  In Holmes,
the defendant sought to prove that another man committed the crime of which he
was accused.  Holmes, 547 U.S. at 323.  A
South Carolina trial court excluded the evidence under the Gregory rule, which restricted the admissibility of evidence
relating to third-party guilt.  Id. at 323–24 (citing State v. Gregory,
16 S.E.2d 532 (S.C. 1941)).  Under the
rule, as extended by the court in Holmes,
evidence was admissible if it
raised an inference as to the defendant’s own innocence, but was inadmissible
if it only “cast bare suspicion upon another” or raised “a conjectural
inference as to the commission of the crime by another.”  Id. (citing Gregory,
16 S.E.2d at 534).  The purpose
of the Gregory rule was “to focus the
trial on the central issues by excluding evidence that has only a very weak
logical connection to the central issues.”  Id.
at 330.  The United States Supreme Court
held that the rule as applied by the South Carolina Supreme Court was “arbitrary”
because it did not rationally serve the end that the Gregory rule was originally designed to further.  Id.
at 331.  

In Texas, the improper exclusion of evidence may raise a constitutional
violation in two circumstances: (1) when an evidentiary rule categorically and
arbitrarily prohibits the defendant from offering relevant evidence that is
vital to his defense, or (2) when a trial court erroneously excludes evidence
that is a vital portion of the case and the exclusion effectively precludes the
defendant from presenting a defense.  Ray v. State, 178 S.W.3d 833, 835 (Tex. Crim.
App. 2005) (citing Potier v. State,
68 S.W.3d 657, 659–62 (Tex. Crim. App. 2002)).

This case
is distinguishable from Holmes in
that the trial court here excluded the statements under the hearsay rule, an
established evidentiary rule trial courts may invoke to exclude otherwise
relevant and admissible evidence.  See Tex.
R. Evid. 402.  Out-of-court
statements are subject to four “dangers”—faulty perception, faulty memory, miscommunication, and insincerity.  Williamson
v. United States, 512 U.S. 594, 598, 114 S. Ct. 2431, 2433 (1994); Walter v. State, 267 S.W.3d 883, 889 (Tex. Crim. App. 2008).  Such statements generally do not have the
same safeguards that are present for in-court statements, such as “[T]he oath,
the witness’ awareness of the gravity of the proceedings, the jury’s ability to
observe the witness’ demeanor, and, most importantly, the right of the opponent
to cross-examine . . . .”  Williamson, 512 U.S. at 598.  The hearsay rule serves to minimize these
dangers for out-of-court statements.  Id.  

The
exclusion of some of the deaf woman’s hearsay statements did not amount to a
constitutional error.  Collier was
allowed to testify that a few hours after the shooting, the deaf woman, while
under the stress and excitement of the situation, verbally stated, “that guy”
while pointing to a group of five people, none of whom was Moland.  Collier also was permitted to testify that a
few moments before she spoke with the deaf woman, she had seen the same group
of men with a black bag that was large enough to carry AK-47s.  Moland thus was allowed to offer exculpatory
evidence suggesting the group of men, which did not include Moland, was
involved in the crime.  We conclude that the
trial court’s application of the evidentiary rules did not deprive Moland of
his Sixth Amendment right to present a complete defense.  See Segundo
v. State, 270 S.W.3d 79, 101–102 (Tex. Crim. App. 2008) (where appellant was allowed to offer
testimony of existence of alternate suspects, appellant’s constitutional rights
were not violated by trial courts exclusion of additional hearsay evidence
concerning the same where appellant failed to show excluded statements were
relevant or reliable) (citing Potier v.
State, 68 S.W.3d at 662, 665) (noting that “courts are free to apply
evidentiary rules that are not arbitrary and unjustified,” and concluding that
“the exclusion of a defendant’s evidence will be constitutional error only if
the evidence forms such a vital portion of the case that exclusion effectively
precludes the defendant from presenting a defense”); see Soffar
v. State, No. AP-75363, 2009
WL 3839012, at *13 (Tex. Crim. App. Nov. 18, 2009) (not designated for
publication) (exclusion of hearsay testimony was not violation of right to present
complete defense under Holmes), cert.
denied, 130 S. Ct. 3507 (2010).  We overrule Moland’s first point of
error.  

Closing Argument

In his
second point of error, Moland contends that the trial court erred in sustaining
the State’s objection to his closing argument. 
Moland argues that trial counsel was attempting to have the jurors “view
Cornman’s credibility and hence the degree of doubt which they should have,
under the rationale which once formed the definition of reasonable doubt” under
Geesa v. State, 820 S.W.2d 154 (Tex.
Crim. App. 1991), overruled in part on
the same grounds by Paulson v. State, 28 S.W.3d 570 (Tex. Crim. App.
2000).  At trial the following argument
was offered in closing:

[Defense Counsel]: . . .Would you trust a guy like that?  You knew everything about Mark Cornman that
you know about him, would you trust him to do things—

 

[Prosecutor]: Objection, that’s an improper argument.  

 

[The Court]: Sustained.  Please
rephrase it.

 

[Defense Counsel]: You know everything about Mark Cornman? Can you trust
him? Would you trust him to do stuff in your everyday life?

 

[Prosecutor]:
I’m going to object. It’s an improper argument.

 

[Defense
Counsel]: It’s not improper, Judge. It’s a reasonable deduction from the
evidence.

 

[The Court]:
Can
you rephrase it rather than the jurors?

 

          Moland’s
counsel continued his argument as to Cornman’s lack of credibility without
objection.  

The State
contends Moland failed to preserve error because the record does not reflect
what Moland’s counsel would have argued to the jury had the trial court not
sustained the State’s objection.  We
agree.  “Where the record does not fully demonstrate to
the reviewing court what counsel would have argued but for an objection, no
demonstration of harmful error is made.” 
Price v. State, 870 S.W.2d
205, 209 (Tex. App.—Fort Worth) (appellant waived issue for review where record
did not reflect what he would have argued if objection had not been sustained),
aff’d, 887 S.W.2d 949
(Tex. Crim. App. 1994) (citing Dean v.
State, 481 S.W.2d 903, 904 (Tex. Crim. App. 1972); see Robinson v. State, 
No. 05-03-01805-CR, 2005 WL 1405735, at *4 (Tex. App.—Dallas June 16, 2005, pet. ref’d) (mem. op.,
not designated for publication) (appellant’s argument that trial court erred in
sustaining State’s objection during closing not preserved for appeal when
appellant did not except to ruling, move for mistrial, or present bill of
review) (citing Ramirez v. State, 815
S.W.2d 636, 648 (Tex. Crim. App. 1991)). 
Moland has not preserved this issue for our review.  See Price,
870 S.W.2d at 209.  We overrule Moland’s second point of
error.  

 

 

Cruel and Unusual Punishment 

In his third and fourth
points of error, Moland argues that his mandatory sentence of life in prison without
the possibility of parole constitutes cruel and unusual punishment because the
sentencing scheme provided no vehicle for the consideration of mitigating
evidence.  Moland asserts this argument under
both the Eighth Amendment of the United States Constitution and Article 1 of
the Texas Constitution.  See U.S. Const. amend. 8; Tex. Const. art.
I, § 13.  

Moland failed preserve his
claimed errors for review.  Before a
party may present a complaint for appellate review, normally the record must
show that the complaint was made to the trial court by a timely request,
objection, or motion. Tex. R. App. P.
33.1(a).  Moland did not object to the sentence
as being cruel and unusual under federal or Texas law following the
pronouncement of the sentence, nor did he do so in his motion for new trial.  Moland contends that he was not required
to make an objection at trial to preserve this issue for review because any
objection at trial would have been futile. 
We disagree.  Both this Court and Fourteenth
Court of Appeals have held that a cruel and unusual punishment claim is waived
if not raised in the trial court.  Benson v. State, 224 S.W.3d 485, 498 (Tex.
App.—Houston [1st Dist.] 2007, no
pet.) (appellant waived raise cruel and unusual punishment argument by failing
to raise issue at trial); Wilkerson v. State, 347
S.W.3d 720, 722 (Tex. App.—Houston
[14th Dist.] 2011, pet. ref’d) (same).  Because no
specific and timely objections were made, Moland has waived these arguments by
raising them for the first time on appeal. 


          We
overrule Moland’s third and fourth points of error.  

Constitutionality of Section 12.31
(a)(2) 

In his fifth point of error, Moland
asserts that a mandatory life sentence without the possibility of parole under Texas Penal Code section 12.31(a)(2) violates the
separation of powers doctrine under article II of the Texas Constitution.  Tex. Penal Code Ann. § 12.31(a) (West 2011).   That doctrine, as articulated in
article II, section 1 of the Texas Constitution, states the following:

The powers of the Government of the State of Texas
shall be divided into three distinct departments, each of which shall be
confided to a separate body of magistracy, to wit: Those which are
Legislative to one; those which are Executive to another, and those which are
Judicial to another; and no person, or collection of persons, being of one of
these departments, shall exercise any power properly attached to either of the
others, except in the instances herein expressly permitted.

 

Tex. Const. art. II, § 1.  Specifically,
Moland argues that section 12.31(a)(2) shifts
power away from the Board of Pardons and Paroles (“Board”), which is an executive
agency, and into the hands of the prosecutor, who is an officer of the
judiciary.  See Tex. Const. art. IV, § 11; Tex. Const. art. V, § 21; Meshell v. State,
739 S.W.2d 246, 253 (Tex. Crim. App. 1987) (holding that county and district
attorneys are officers within judicial department). 

Moland’s argument focuses on the discretionary aspect of sentencing under
Texas Penal Code section 12.31.  In a
capital trial, the prosecutor may elect to seek a punishment in the form of
death or, alternatively, a sentence of life without a possibility of parole.  Tex.
Penal Code Ann. § 12.31(a).  When
the prosecutor elects to seek life without the possibility of parole and a
conviction is secured, the mandatory sentence precludes the Board from ever
exercising its powers of executive clemency.  See Tex. Gov’t Code Ann. § 508.141 (West
Supp. 2011).  Moland claims that this
violates the separation of powers doctrine because the election permits the
prosecutor to determine that a capital defendant is not deserving of parole
regardless of individual circumstances, a decision that is otherwise left to
the Board when the defendant is convicted on a lesser charge.  Moland contends that because any
objection at trial would have been futile, he has not waived the right to make
this argument for the first time on appeal. 
We disagree.

The Texas Court of Criminal Appeals
has held that an appellant may not raise a facial challenge to the
constitutionality of a statute for the first time on appeal.  Karenev
v. State, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009).  In reaching its holding, the Court overruled
its earlier decision in Rose v. State, 752
S.W.2d 529 (Tex. Crim. App. 1987) (op. on reh’g), in which it held that a separation
of powers challenge to a penal statute could be raised for the first time on
appeal.  Karenev, 281 S.W.3d at 433–34.  In Karenev,
the Court stated that statutes are presumed to be constitutional until it is
determined otherwise and “[t]he State and the trial court should not be
required to anticipate that a statute may later be held to be
unconstitutional.”  Id. at 434.  Here, Moland concedes
that he did not assert his constitutional challenge to Texas Penal Code 
section 12.31 (a)(2) at trial or
in his motion for new trial.  Accordingly,
we hold that Moland has waived his right to appeal this issue.  Tex.
R. App. P. 33.1; Karenev, 281
S.W.3d at 434; see Wilkerson, 347
S.W.3d at 724 (following Karenev,
appellant cannot, for first time on appeal, raise argument that Texas Penal
Code section 12.31 violates separation of powers doctrine); see also Reyna v. State, 168 S.W.3d 173,
179–80 (Tex. Crim. App. 2005) (holding that defendant did not preserve
Confrontation Clause objection by failing to clearly articulate objection in
trial court).  

We overrule Moland’s fifth issue.

Conclusion

We affirm the judgment of the trial
court. 

 

                                                                  Rebeca
Huddle

                                                                  Justice


 

Panel
consists of Chief Justice Radack and Justices Bland and Huddle.

Do
not publish.   Tex. R. App. P. 47.2(b).











[1]           The State does not dispute this
contention on appeal.