**Opinion issued September 7, 2023**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-21-00725-CR

———————————

**ROBERT LEE CROW, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 434th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 15-DCR-070689**

---

## MEMORANDUM OPINION

After appellant, Robert Lee Crow, with an agreed punishment recommendation from the State, pleaded guilty to the felony offense of aggravated assault,[1] the trial court deferred adjudication of his guilt and placed him on

---

[1] *See* TEX. PENAL CODE ANN. §§ 22.01(a), 22.02(a), (b).

community supervision for four years.[2]  The State, alleging numerous violations of the conditions of appellant's community supervision, later moved to adjudicate his guilt.  After a hearing, the trial court found the allegations true, found appellant guilty, and assessed his punishment at confinement for ten years.  In three issues, appellant contends that his trial counsel provided him with ineffective assistance of counsel.

We affirm.

## Background

On December 5, 2016, appellant pleaded guilty to the felony offense of aggravated assault.  The trial court deferred adjudication of appellant's guilt and placed him on community supervision, subject to certain conditions, including Condition A, which stated that appellant must:

> A.    Commit no offense against the laws of this [S]tate or of any other state of the United States.

On February 28, 2020, the trial court modified the conditions of appellant's community supervision to include Conditions GG, HH, and JJ, which stated:

> GG.   [Appellant] is prohibited from communicating, directly, through any other person, or through any medium including but not limited to orally, by phone, or in writing, through U.S. Mail, electronic mail, social media or other electronic applications or accounts with Ashley Mendoza . . . and/or any member of the family or household of . . . Mendoza in a threatening or harassing manner[.]

---

[2]    The term of appellant's community supervision was later extended by three years.

HH.   [Appellant] is prohibited from communicating a threat, directly, through any other person, or through any medium including but not limited to orally, by phone, or in writing, through U.S. Mail, electronic mail, social media or other electronic applications or accounts, to . . . Mendoza . . . and/or any member of the family or household of . . . Mendoza[.]

JJ.   [Appellant] is prohibited from engaging in conduct directed specifically toward . . . Mendoza . . . and/or any member of the family or household of . . . Mendoza that is reasonably likely to harass, annoy, alarm, abuse, torment or embarrass . . . Mendoza . . . and/or any member of the family or household of . . . Mendoza[.]

On August 6, 2020, the Stated moved to adjudicate appellant's guilt, alleging that appellant had violated numerous conditions of his community supervision because, among other things:

- On or about the 16th of June, 2020 in Harris County, Texas, [appellant] did then and there unlawfully intentionally and knowingly cause bodily injury to . . . Mendoza[,] a person whom [appellant] had a dating relationship, by impeding the normal breathing and circulation of the blood of . . . Mendoza by applying pressure to . . . Mendoza's throat and neck; [and]

- On or about the 1st day of July, 2020 in Harris County, Texas, [appellant] did then and there unlawfully, with knowledge of the issuance of a magistrate's order for emergency protection issued under [a]rticle 17.292 of the Code of Criminal Procedure, violate said order by intentionally and knowingly going to and near a place specifically described in the order, to wit: 19321 Park Row the residence of . . . Mendoza.

On November 23, 2021, the trial court held a hearing on the State's motion to adjudicate guilt, during which appellant pleaded "[n]ot true" to the allegations in the State's motion.   At the hearing, Fort Bend County Community Supervision

Correction Department Officer L. Martinez, Harris County Sheriff's Office ("HCSO") Officer C. Shbeeb, HSCO Officer C. Silverio, and Mendoza testified for the State. Appellant's mother, Bonnie Crow, testified for appellant.

After hearing the evidence, the trial court found that appellant had violated the conditions of his community supervision, as the State had alleged in its motion to adjudicate guilt. The trial court then found appellant guilty of the felony offense of aggravated assault and assessed his punishment at confinement for ten years. The trial court imposed its judgment adjudicating appellant's guilt on November 23, 2021 in open court.

On December 8, 2021, the trial court held a hearing at which appellant and appellant's appointed trial counsel, Calvin Parks,[3] were present. During the hearing, the trial court signed the written judgment adjudicating appellant's guilt. Parks told the trial court that he had reviewed the written judgment with appellant.

On December 27, 2021, Parks filed a motion to withdraw, stating that he had advised appellant of his right to file a motion for new trial and a notice of appeal. Parks also told appellant that he would assist appellant in requesting the prompt appointment of replacement counsel, and he advised appellant that if replacement

---

[3]     Parks was appointed to represent appellant on June 17, 2021, and he represented appellant until January 4, 2022, including at the November 23, 2021 hearing on the State's motion to adjudicate guilt and at the trial court's December 8, 2021 hearing. References to appellant's "trial counsel" in this memorandum opinion refer to Parks.

4

counsel was not appointed promptly and appellant wanted to pursue an appeal, Parks would file a notice of appeal for appellant. Parks requested that he be allowed to withdraw and that the trial court appoint appellate counsel to represent appellant on appeal. Also, on December 27, 2021, Parks filed a notice of appeal on appellant's behalf.[4]

On January 4, 2022, the trial court granted Parks's motion to withdraw and appointed Julia Bella to represent appellant. On January 7, 2022, Bella filed an untimely motion for new trial.[5] The trial court held a hearing on appellant's untimely motion for new trial on February 1, 2022.

At the motion-for-new-trial hearing, Parks testified that he had been practicing law since 2000, and he handled criminal cases involving first-degree felonies "all the way down." He was appointed to represent appellant on June 17, 2021 related to "a proceeding on a motion to adjudicate [guilt] filed by the State." At the time he was appointed, the State's motion to adjudicate guilt had already been filed. On November 23, 2021, there was a hearing on the State's motion to adjudicate guilt. At the conclusion of the hearing, the trial court found the allegations in the State's

---

[4]     *See* TEX. R. APP. P. 26.2(a)(1) (defendant's notice of appeal must be filed within thirty days after the date defendant's sentence is imposed in open court); *see also id.* 4.1(a) ("Computing Time").

[5]     Appellant's motion for new trial was due on or before December 27, 2021. *See id.* 21.4(a) ("The defendant may file a motion for new trial before, but no later than 30 days after, the date when the trial court imposes or suspends sentence in open court."); *see also id.* 4.1(a) ("Computing Time").

motion true and sentenced appellant to confinement for ten years. Appellant was "remanded to the sheriff at th[at] time." Parks did not move to withdraw as appellant's counsel at the conclusion of the November 23, 2021 adjudication hearing.

Following the November 23, 2021 adjudication hearing, Parks communicated with the State about corrections in certain documents, including the trial court's written judgment adjudicating guilt and the certification of appellant's right to appeal, which the trial court needed to sign. Parks noted that corrections were needed as to "the proper amount of [jail time] credit" and as to appellant's plea to the allegations in the State's motion to adjudicate guilt. Parks was scheduled to attend a hearing in appellant's case on November 29, 2021, but he had a conflict, and the hearing was rescheduled for December 8, 2021. During that time period, Parks did not "notify anyone that [he] intended to withdraw [as appellant's counsel] for the purposes of [an] appeal."

According to Parks, on December 8, 2021, he was present for a hearing with appellant, and the trial court completed its written judgment adjudicating guilt and the certification of appellant's right to appeal. Parks did not tell the trial court at that hearing that he would not be representing appellant on appeal.

Parks further testified that although he never intended to represent appellant on appeal, he had discussions in person with appellant about an appeal at the

6

conclusion of the November 23, 2021 hearing on the State's motion to adjudicate guilt. And initially, appellant "was not sure whether or not he wanted to appeal." "[T]here was no sentiment at that particular time [as to] whether [appellant] wanted to appeal . . . ." Parks also told appellant about the deadlines for filing a motion for new trial and a notice of appeal.[6] It was not until later that Parks "fully learned" that appellant wanted to appeal the trial court's adjudication of his guilt when he received a telephone call from appellant's mother.

Parks also testified that he discussed with appellant, at the December 8, 2021 hearing, appellant's right to appeal. Parks told appellant that he would be withdrawing from appellant's case and that the trial court would be able to appoint appellant an attorney to represent him on appeal. Additionally, Parks told appellant that he would file a notice of appeal on appellant's behalf to preserve appellant's right to appeal and he would file a motion to withdraw at the same time. And Parks told appellant that appellant would receive a new attorney after the motion to withdraw was ruled on by the trial court. Parks noted that appellant was also advised of his right to appeal by the trial court's certification of appellant's right to appeal which appellant and Parks both signed at the December 8, 2021 hearing. According to Parks, appellant still did not know if he wanted to appeal at the time of the

---

[6] As to a motion for new trial, Parks stated that he was familiar with the deadline for filing a motion for new trial, which was "30 days . . . from sentencing."

December 8, 2021 hearing, and appellant had not told Parks that he wanted by appeal as of December 8, 2021. Parks did not speak with appellant after December 8, 2021. Parks filed his motion to withdraw and a notice of appeal on appellant's behalf on December 27, 2021.

As to his representation of appellant related to the State's motion to adjudicate guilt, Parks testified that he received a copy of the State's motion, which he reviewed. The State's motion contained "new law violations" by appellant. Parks also received discovery from the State. Parks did not file a "notice of any extraneous offenses or bad acts that might come up during" the hearing on the motion to adjudicate guilt, and Parks did not seek discovery from the attorney who was representing appellant on other criminal charges pending in Harris County. Parks also did not contact the attorney who had previously represented appellant in the instant case, and he did not ask to "review the probation department's file" related to appellant. In reviewing the records in appellant's case, Parks learned that the State had filed several motions to adjudicate guilt due to "other law violations" that appellant committed while on community supervision.

Parks noted that during his representation of appellant, he spoke to Bonnie, appellant's mother, many times, and she "mentioned to [him] about some of [appellant's] family history," including about appellant's biological mother and father and about appellant's adoption. Bonnie did not mention that appellant had

8

any mental health history, but Parks discussed with Bonnie whether appellant had "anger issues" and "him growing up." Bonnie did not mention to Parks that anyone else might have knowledge of appellant's mental health, and she never stated that appellant had "a mental health problem." Bonnie did not tell Parks any "mitigating evidence" about appellant other than that he "gets angry." Bonnie also never mentioned any potential narcotics use by appellant.

Parks further testified that based on his conversations with appellant, appellant did not appear to suffer from any type of mental health disorder. He was coherent, and nothing in appellant's behavior indicated that he had a mental health issue. Parks noted that although appellant was "an angry person," that did not mean that he had "a mental health problem." Appellant understood the State's motion to adjudicate guilt and the pending criminal charges against him in Harris County. And appellant was "able to assist" Parks. Appellant never told Parks that he had ever used narcotics.

According to Parks, he handled the investigation in appellant's case, and he did not believe that he needed to seek outside assistance with the investigation. Parks spoke with appellant as part of his investigation, including about the allegations against him, about "what was going on between [appellant]" and Mendoza, the mother of appellant's children, and about the fact that appellant believed that

Mendoza was falsifying the allegations against him for various reasons. Parks also reviewed law enforcement reports related to appellant's "new law violations."

Parks further testified that he was aware that he could have sought a "bifurcated proceeding," meaning there could have been a "factual determination portion of the hearing" on the State's motion to adjudicate guilt and a punishment portion. But appellant's mother was the "only potential punishment witness" who would testify on appellant's behalf, and she testified at the non-bifurcated November 23, 2021 adjudication hearing. According to Parks, the testimony that Bonnie provided at the November 23, 2021 adjudication hearing was the same testimony that she would have provided in a punishment portion of a bifurcated proceeding. And appellant was not going to testify, so there was no additional punishment evidence to put forward other than what was already presented at the November 23, 2021 hearing on the State's motion to adjudicate guilt. Parks stated that it was a "strategy decision" to proceed with a single hearing on the State's motion to adjudicate guilt and to not have a "bifurcated" proceeding. Parks believed that any testimony that would have been presented in a punishment portion of a bifurcated proceeding was already presented in the "factual determination portion" of the non-bifurcated November 23, 2021 adjudication hearing. Additionally, Parks noted that appellant had a criminal history and having a bifurcated proceeding would have been detrimental to appellant because the State could have presented "a litany of

additional judgments" to the trial court related to appellant's criminal history. Parks's strategy was to "tamp down the evidence that was presented by the State," and attack the new criminal charges through cross-examination. In a separate punishment hearing, the State would have been able to introduce "[p]rior judgments" against appellant which would have "exacerbated [appellant's] problem[s]."

As to the mitigating evidence that Bonnie testified to at the November 23, 2021 adjudication hearing, Parks explained that she testified that appellant was her son, she loved him, and she "talked about some family history" like "his adoption and things such as that." Parks also explained that except for Bonnie, appellant "did not want any other witnesses to appear" on his behalf. When Parks asked appellant about "any potential punishment witnesses that he'd like to have come to court to testify on his behalf," appellant would only provide Parks information about Bonnie. Appellant specifically instructed Parks "not to have anyone else . . . testify other than" Bonnie.

Parks further explained that Bonnie did not give Parks any information about other family members who could testify on appellant's behalf when Parks spoke with her. And he reiterated that neither appellant nor Bonnie ever conveyed to him any information about appellant's mental health history. Parks testified that appellant did not want to testify "about [any] of his mitigating factors," such as "his own family history or whether there was some type of mental health problem."

11

Bonnie testified at the motion-for-new-trial hearing that she had previously testified at the November 23, 2021 hearing on the State's motion to adjudicate guilt because she was "aware that [appellant] had violated his protective order." But she did not testify about appellant's life beyond the allegations in the State's motion to adjudicate guilt. Parks did not ask Bonnie about appellant's mental health history or about appellant's previous mental health treatment. And Bonnie did not testify about appellant's employment history, his relationship with his children, or "any type of rehabilitation courses that [appellant] had certificates for." Before the November 23, 2021 adjudication hearing, Bonnie spoke to Parks on the telephone, and she met with him on November 23, 2021 before the adjudication hearing began.

Bonnie also testified that at some point, although she could not recall when, she told Parks that appellant wanted to appeal the trial court's adjudication of his guilt. Bonnie called Parks because appellant could not "get ahold" of him.

At the conclusion of the hearing on appellant's untimely motion for new trial, the trial court found that it imposed appellant's sentence on November 23, 2021. The trial court did not rule on appellant's untimely motion for new trial.

**Standard of Review**

The Sixth Amendment to the United States Constitution guarantees the right to the reasonably effective assistance of counsel in criminal prosecutions. U.S. CONST. VI; *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); *see also*

12

TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 1.05; *Hernandez v. State*, 726 S.W.2d 53, 55–57 (Tex. Crim. App. 1986) (test for ineffective assistance of counsel same under both federal and state constitutions).  To prove a claim of ineffective assistance of counsel, appellant must show that (1) his trial counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011).  Appellant has the burden to establish both prongs of the *Strickland* test by a preponderance of the evidence.  *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998).  "[A]ppellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong."  *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *see also Strickland*, 466 U.S. at 697.

"A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance fell within the wide range of reasonable professional assistance or trial strategy.  *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006).  To rebut that presumption, a claim of ineffective assistance must be "firmly founded in the record," and "the

13

record must affirmatively demonstrate" the meritorious nature of the claim. *See Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012) (internal quotations omitted).

## Ineffective Assistance of Counsel

In his first issue, appellant argues that his trial counsel rendered ineffective assistance of counsel "during the motion for new trial time period" because trial counsel "abandoned [a]ppellant's case following the adjudication hearing on November 23, 2021" and "[t]he record rebuts the presumption that trial counsel carefully considered filing a motion for new trial before making a strategic decision to [forgo] the motion." In his second issue, appellant argues that his trial counsel rendered ineffective assistance of counsel because trial counsel did not "effectively communicate with [a]ppellant and advise him of his options on appeal, including his right to file a motion for new trial," did not "withdraw as counsel of record immediately after [appellant's] sentence was pronounced so that the trial court would be able to appoint new counsel and new counsel would have [had a] full thirty[-]day time period," and did not file a motion for new trial "complaining that [a]ppellant did not have a sentencing hearing and that [a]ppellant did not have the opportunity to present mitigating evidence at the [adjudication] hearing prior to the trial court's ruling on punishment." In his third issue, appellant argues that his trial counsel rendered ineffective assistance of counsel because trial counsel "failed to

14

investigate or present mitigating evidence" at the November 23, 2021 hearing on the State's motion to adjudicate guilt.

## A. Lack of Counsel During Time for Filing Motion for New Trial

In his first issue, appellant argues that his trial counsel "abandoned [his] case following" the November 23, 2021 hearing on the State's motion to adjudicate guilt and "[t]he record rebuts the presumption that trial counsel carefully considered filing a motion for new trial before making a strategic decision to [forgo] the motion" because trial counsel testified at the motion-for-new-trial hearing that "he never intended to represent [a]ppellant during the appeals process," he "did not communicate with [a]ppellant following the imposition of the sentence," he "learned that [a]ppellant wanted to move forward with an appeal from [a]ppellant's mother," and he filed a motion to withdraw on December 27, 2021—the date appellant's motion for new trial was due. Because he was purportedly deprived of counsel during the motion-for-new-trial stage, appellant asserts that we should "presume that . . . appellant has been harmed" and should "abate the appeal and remand the case to the trial court to allow [a]ppellant . . . an out-of-time motion for new trial."[7]

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to have counsel present at all "critical" stages of his prosecution.

---

[7] Due to our disposition of appellant's complaints, we need not consider appellant's abatement request. *See* TEX. R. APP. P. 47.1.

*See* U.S. CONST. amend. VI; *Montejo v. Louisiana*, 556 U.S. 778, 786, (2009) (internal quotations omitted). One such critical stage is the period for filing a motion for new trial. *Cooks v. State*, 240 S.W.3d 906, 911 (Tex. Crim. App. 2007); *Carnell v. State*, 535 S.W.3d 569, 571–72 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *see also* TEX. R. APP. P. 21.4(a) (defendant has thirty days after trial court imposes or suspends sentence in open court to file motion for new trial). If a defendant is deprived of counsel during this stage of his prosecution, his constitutional rights are violated. *Cooks*, 240 S.W.3d at 911; *Carnell*, 535 S.W.3d at 572.

But, if the defendant was represented by counsel at trial, there is a rebuttable presumption that trial counsel continued to adequately represent the defendant after trial, including during the critical motion-for-new-trial stage. *Cooks*, 240 S.W.3d at 911; *Carnell*, 535 S.W.3d at 572; *Monakino v. State*, 535 S.W.3d 559, 563 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *Green v. State*, 264 S.W.3d 63, 69 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) ("Our appellate review . . . begins with the presumption that trial counsel continued to effectively represent the [defendant] during the 30-day window for filing a motion for new trial."). Further, if the defendant was represented by counsel at trial and he does not file a motion for new trial, we assume it was because the defendant, with the benefit of his counsel's continued representation, considered and rejected that option. *Cooks*, 240 S.W.3d at 911 n.6; *Carnell*, 535 S.W.3d at 572; *Monakino*, 535 S.W.3d at 563; *see also*

16

*Benson v. State*, 224 S.W.3d 485, 491 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("[W]e presume that the reason that a motion for new trial was not filed was because the [defendant] considered filing it but opted not to file it.").

The defendant has the burden of presenting evidence to rebut the presumption of continued adequate representation. *Carnell*, 535 S.W.3d at 572; *Green*, 264 S.W.3d at 69. If the defendant rebuts this presumption and shows that he was deprived of counsel during a critical stage of his prosecution, the error is reviewed to determine whether it was harmful. *Cooks*, 240 S.W.3d at 911; *Carnell*, 535 S.W.3d at 572.

How the harm is analyzed depends on whether the defendant was deprived of counsel for all or only part of the critical motion-for-new-stage. *Carnell*, 535 S.W.3d at 572. If the defendant was deprived of counsel for all of the critical stage, then the deprivation was total, and harm is presumed. *Batiste v. State*, 888 S.W.2d 9, 14 (Tex. Crim. App. 1994) ("[W]ith some varieties of Sixth Amendment violation[s], such as the actual or constructive denial of counsel altogether at a critical stage of the criminal proceeding, . . . prejudice is presumed."); *Carnell*, 535 S.W.3d at 572. But if the defendant was deprived of counsel for some but not all of the critical stage, then the deprivation was only partial, and the defendant must show harm. *Carnell*, 535 S.W.3d at 572. For example, when the defendant was deprived of counsel for part of the period for filing a motion for new trial, and, as a result,

17

failed to file a motion, he must show harm by alleging a "facially plausible" claim that he could have developed in a motion for new trial. *See Cooks*, 240 S.W.3d at 911–12; *Carnell*, 535 S.W.3d at 572–73. If the deprivation was harmful, the proper remedy is to abate the appeal and remand the case to the trial court to allow the defendant to file an out-of-time motion for new trial. *See Ward v. State,* 740 S.W.2d 794, 800 (Tex. Crim. App. 1987); *Carnell*, 535 S.W.3d at 573. *Green*, 264 S.W.3d at 69; *Massingill v. State*, 8 S.W.3d 733, 738–39 (Tex. App.—Austin 1999, no pet.).

To defeat the presumption that the defendant was adequately represented during the period for filing a motion for new trial, he must show more than that: (1) he filed a pro se notice of appeal; (2) his appellate attorney was "to be determined"; (3) the trial court appointed appellate counsel after the expiration of the time for filing a motion for new trial; (4) on appeal, he would have raised further complaints had a motion for new trial been filed; (5) he appeared without counsel when signing a pauper's oath and requesting appellate counsel; and (6) the record shows no activity by trial counsel or any motion to withdraw from the case. *See Oldham v. State*, 977 S.W.2d 354, 362–63 (Tex. Crim. App. 1998); *Green*, 264 S.W.3d at 69. Notably, in order to rebut the presumption that the defendant was adequately represented, the record must "compel[] the conclusion that [the defendant] was abandoned by trial counsel." *Green*, 264 S.W.3d at 71; *see also Monakino*, 535 S.W.3d at 565.

Here, the trial court imposed appellant's sentence in open court on November 23, 2021. Under Texas Rule of Appellate Procedure 21.4(a), appellant then had thirty days to file a motion for new trial. *See* TEX. R. APP. P. 21.4(a) ("The defendant may file a motion for new trial before, but no later than 30 days after, the date when the trial court imposes or suspends sentence in open court."). Appellant's motion for new trial was thus due on December 27, 2021. *See id.* 4.1(a) ("Computing Time").

Appellant argues that he rebutted the presumption that his trial counsel continued to adequately represent him during the motion-for-new-trial stage because at the hearing on appellant's untimely motion for new trial, trial counsel purportedly testified that "he never intended to represent [a]ppellant during the appeals process," he "did not communicate with [a]ppellant following the imposition of the sentence," he "learned that [a]ppellant wanted to move forward with an appeal from [a]ppellant's mother," and he filed a motion to withdraw on December 27, 2021—the date appellant's motion for new trial was due.

Contrary to appellant's assertions, however, the record reflects that appellant's trial counsel continued to represent him after the November 23, 2021 hearing on the State's motion to adjudicate guilt. At the hearing on appellant's untimely motion for new trial, Parks, appellant's trial counsel, testified that he was appointed to represent appellant on June 17, 2021 related to the State's motion to

19

adjudicate guilt. At the conclusion of the trial court's November 23, 2021 hearing on the State's motion, the trial court found the allegations in the State's motion to adjudicate guilt true and sentenced appellant to confinement for ten years. Parks did not move to withdraw as appellant's counsel at the conclusion of the November 23, 2021 adjudication hearing.

After the November 23, 2021 adjudication hearing, Parks communicated with the State about corrections in certain documents, including the trial court's written judgment adjudicating guilt and the certification of appellant's right to appeal, which the trial court needed to sign. And a hearing was scheduled for December 8, 2021, at which Parks was present with appellant. At the December 8, 2021 hearing, the trial court completed its written judgment adjudicating guilt and the certification of appellant's right to appeal, and appellant was advised of his right to appeal because he and Parks both signed the certification of appellant's right to appeal. Between November 23, 2021 and December 8, 2021, Parks did not move to withdraw.

As to his discussions with appellant, Parks testified that at the conclusion of the November 23, 2021 hearing on the State's motion to adjudicate guilt, Parks spoke to appellant in person about whether he wanted to appeal. At that time, appellant "was not sure whether or not he wanted to appeal." "[T]here was no sentiment at that particular time [as to] whether [appellant] wanted to appeal . . . ." Parks also told appellant about the deadlines for filing a motion for new trial and a

20

notice of appeal. *See Silva v. State*, No. 01-07-01038-CR, 2009 WL 3490984, at *3 (Tex. App.—Houston [1st Dist.] Oct. 29, 2009, no pet.) (mem. op., not designated for publication) (concluding defendant failed to rebut presumption that he was adequately represented during motion-for-new-trial stage where record "suggest[ed] that [he] was aware of the opportunity to ask for a new trial and that this opportunity would expire"); *Rogers v. State*, 305 S.W.3d 164, 171–72 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (concluding defendant did not sufficiently rebut presumption that his trial counsel continued to represent him effectively where record showed counsel notified defendant of his right to file motion for new trial after sentencing and defendant told counsel he would "get back" to him when he made that decision (internal quotations omitted)).

Further, Parks, at the December 8, 2021 hearing, discussed with appellant his right to appeal. Parks did tell appellant that he would be withdrawing from his case, but that the trial court would appoint appellant an attorney to represent appellant on appeal. Additionally, Parks told appellant that he would file a notice of appeal on appellant's behalf to preserve appellant's right to appeal and he would file a motion to withdraw at the same time. Parks informed appellant that appellant would receive a new attorney after the motion to withdraw was ruled on by the trial court. Parks testified that appellant still did not know if he wanted to appeal at the time of the December 8, 2021 hearing, and appellant had not told Parks that he wanted to appeal

21

as of December 8, 2021. Later, although Parks could not recall when, Bonnie, appellant's mother, told Parks that appellant wanted to appeal the trial court's adjudication of appellant's guilt. *See Benson*, 224 S.W.3d at 497 (filing by defendant of notice of appeal is evidence defendant was informed of at least some of his appellate rights). On December 27, 2021, Parks filed his motion to withdraw and a notice of appeal on appellant's behalf. The trial court did not grant Parks's motion to withdraw until January 4, 2022—after the deadline for filing a motion for new trial had passed. *See Rodriguez v. State*, No. 03-18-00260-CR, 2018 WL 6425018, at *9 (Tex. App.—Austin Dec. 7, 2018, pet. ref'd) (mem. op., not designated for publication) (concluding defendant did not rebut presumptions that his trial counsel represented him effectively during motion-for-new-trial stage and that trial counsel discussed option of filing new-trial motion but defendant rejected it where trial counsel did not withdraw until last day of "the 30-day period for filing a motion for new trial"); *Smallwood v. State*, 296 S.W.3d 729, 734–36 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding defendant did not rebut presumption of adequate representation during motion-for-new-trial stage, where defendant's trial counsel filed notice of appeal and motion to withdraw thirty days after sentencing and trial court granted motion to withdraw after new-trial period); *Welch v. State*, Nos. 14-08-00253-CR, 14-08-00254-CR, 2009 WL 909613, at *9 (Tex. App.—Houston [14th Dist.] Apr. 7, 2009, no pet.) (mem. op., not designated for

22

publication) (explaining trial court did not act on trial counsel's motion to withdraw until after time for filing motion for new trial had expired; thus, counsel remained appellant's counsel for all purposes and defendant did not overcome presumption that he was adequately represented by counsel during motion-for-new-trial stage).

As stated above, we must begin with the presumption that counsel, who represented a defendant at trial, continued to adequately represent the defendant during the critical motion-for-new-trial stage. *See Cooks*, 240 S.W.3d at 911; *Carnell*, 535 S.W.3d at 572; *Monakino*, 535 S.W.3d at 563; *Green*, 264 S.W.3d at 69. Further, when a motion for new trial is not filed in a case, we must presume that the defendant was counseled by his attorney regarding the merits of the motion and ultimately rejected the option. *See Cooks*, 240 S.W.3d at 911 n.6; *Carnell*, 535 S.W.3d at 572; *Monakino*, 535 S.W.3d at 563; *see also Benson*, 224 S.W.3d at 491 ("[W]e presume that the reason that a motion for new trial was not filed was because the [defendant] considered filing it but opted not to file it."). These presumptions will not be rebutted when there is nothing in the record to suggest otherwise. *See Prudhomme v. State*, 28 S.W.3d 114, 119 (Tex. App.—Texarkana 2000, order); *see also Oldham*, 977 S.W.2d at 363; *Green*, 264 S.W.3d at 71.

Here, there is nothing in the record indicating that trial counsel did not advise appellant of his post-conviction rights or that counsel refused to take any action requested by appellant. *See Green*, 264 S.W.3d at 71; *Benson*, 224 S.W.3d at 497.

23

Thus, we cannot conclude that appellant has rebutted the presumptions that he had adequate assistance of counsel during the time for filing a motion for new trial or that appellant rejected the option of filing a motion for new trial. *See Green*, 264 S.W.3d at 71 ("Nothing in the record compels the conclusion that [the defendant] was abandoned by trial counsel."); *Benson*, 224 S.W.3d at 498; *see also Silva*, 2009 WL 3490984, at *3 ("Because we presume continued effective representation, [the defendant is] required to produce some evidence that his trial counsel terminated his representation of him or became ineffective."). We hold that appellant has not met his burden of establishing that he was deprived of counsel during the motion-for-new-trial stage or that his trial counsel acted ineffectively.

We overrule appellant's first issue.

## B.    Ineffective Assistance During Motion-for-New-Trial Stage

In his second issue, appellant argues that his trial counsel rendered ineffective assistance of counsel during the motion-for-new-trial stage because he purportedly did not "effectively communicate with [a]ppellant and advise him of his options on appeal, including his right to file a motion for new trial," did not "withdraw as counsel of record immediately after [appellant's] sentence was pronounced so that the trial court would be able to appoint new counsel and new counsel would have [had a] full thirty[-]day time period," and did not file a motion for new trial "complaining that [a]ppellant did not have a sentencing hearing and that [a]ppellant

24

did not have the opportunity to present mitigating evidence at the [adjudication] hearing prior to the trial court's ruling on punishment."

As noted above, to prove a claim of ineffective assistance of counsel, appellant must establish that his trial counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687–88, 694; *Lopez*, 343 S.W.3d at 142. Notably, there is a "strong presumption that counsel's performance fell within the wide range of reasonably professional assistance." *Lopez*, 343 S.W.3d at 142 (internal quotations omitted); *see also Robertson*, 187 S.W.3d at 482–83; *Mata v. State*, 226 S.W.3d 425, 428 (Tex. Crim. App. 2007) (judicial scrutiny of counsel's performance must be highly deferential). "It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions . . . were merely of questionable competence." *Lopez*, 343 S.W.3d at 142–43 (internal quotations omitted); *see also Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2007) (even if trial counsel's performance seems questionable in hindsight, that is not enough). In assessing effective assistance of counsel, an appellate court must review the totality of the representation and circumstances of each case without the benefit of hindsight. *Lopez*, 343 S.W.3d at 143; *Robertson*, 187 S.W.3d at 482–83. The record must demonstrate that appellant's counsel's performance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions. *Lopez*, 343 S.W.3d at 143.

Appellant first argues that his trial counsel's performance fell below an objective standard of reasonableness because counsel purportedly did not "effectively communicate with [a]ppellant and advise him of his options on appeal, including his right to file a motion for new trial."

Trial counsel has the responsibility to consult with and advise the defendant about the meaning and effect of the judgment rendered by the trial court, the right to appeal from the judgment, the need to give notice of appeal and take other steps to pursue an appeal, as well as a responsibility to express counsel's professional judgment as to possible grounds for appeal and their merit and delineate advantages and disadvantages of appeal. *See Ex parte Axel*, 757 S.W.2d 369, 374 (Tex. Crim. App. 1988). A rebuttable presumption exists that counsel discussed the merits of a motion for new trial with a defendant, and the defendant considered and rejected it. *See Oldham*, 977 S.W.2d at 363; *see also Cooks*, 240 S.W.3d at 911 n.6; *Benson*, 224 S.W.3d at 491.

Here, Parks, at the hearing on appellant's untimely motion for new trial, testified that at the conclusion of the November 23, 2021 hearing on the State's motion to adjudicate guilt, he spoke to appellant about an appeal, and appellant "was not sure whether or not he wanted to appeal." At the time, appellant expressed "no sentiment . . . [as to] whether [he] wanted to appeal." Parks also told appellant about the deadlines for filing a motion for new trial and a notice of appeal at that time.

26

Parks further testified that on December 8, 2021, he and appellant discussed appellant's right to appeal, and Parks told appellant that he would file a notice of appeal on appellant's behalf to preserve appellant's right to appeal. Parks also noted that appellant was advised at the December 8, 2021 hearing about his right to appeal because he and Parks both signed the trial court's certification of appellant's right to appeal.[8] As of December 8, 2021, appellant still did not know if he wanted to appeal. When appellant's mother, Bonnie, later contacted Parks to let him know that appellant wanted to appeal the trial court's adjudication of his guilt, Parks timely filed a notice of appeal on appellant's behalf. *See* TEX. R. APP. P. 26.2(a)(1) (defendant's notice of appeal must be filed within thirty days after the date defendant's sentence is imposed in open court); *see also id.* 4.1(a) ("Computing Time"). We conclude that appellant has not shown that his trial counsel failed to advise him of the right to file a motion for new trial or an appeal or that his trial counsel's performance fell below an objective standard of reasonableness. *See Ex parte O'Neal*, No. 09-15-00229-CR, 2015 WL 5604623, at *6 (Tex. App.— Beaumont Sept. 23, 2015, pet. ref'd) (mem. op., not designated for publication) (concluding defendant failed to meet his burden to establish that trial counsel's

---

[8] The trial court's certification of appellant's right of appeal states that appellant's case was "not a plea-bargain case, and [appellant] ha[d] the right of appeal." *See* TEX. R. APP. P. 25.2(d). Appellant signed the certification, confirming that he had received a copy of the certification and he had been "informed of [his] rights concerning any appeal."

27

representation was deficient where trial court's certification, that defendant signed, informed him that he had right to appeal and trial counsel testified that she informed defendant of right to appeal and deadline for filing notice of appeal); *Rogers*, 305 S.W.3d at 171–72 (record supported conclusion counsel acted effectively at all times where defendant did not show that trial counsel failed to advise him of right to file motion for new trial or appeal); *see also Mercado v. State*, 615 S.W.2d 225, 228 (Tex. Crim. App. 1981) (claims of ineffective assistance of counsel must be firmly grounded in record).

Appellant next argues that his trial counsel's performance fell below an objective standard of reasonableness because counsel did not "withdraw as counsel of record immediately after [appellant's] sentence was pronounced so that the trial court would be able to appoint new counsel and new counsel would have [had a] full thirty[-]day time period." Notably, because we have already concluded that there is no evidence in the record to rebut the presumption that appellant was adequately represented by his trial counsel during the motion-for-new-trial stage, the record is also insufficient to show trial counsel's performance fell below an objective standard of reasonableness because he did not "withdraw as counsel . . . immediately." *See Straughter v. State*, No. 14-18-00408-CR, 2019 WL 3293978, at *5 (Tex. App.— Houston [14th Dist.] July 23, 2019, no pet.) (mem. op., not designated for publication) (where defendant asserted "that his trial counsel provided ineffective

assistance of counsel by failing to withdraw during the motion for new trial period," concluding, "[b]ecause there [was] no evidence to rebut the presumption that [defendant] was adequately represented during the new trial period, . . . the record [was] insufficient to satisfy *Strickland*'s first prong"); *Kane v. State*, 80 S.W.3d 693, 696 (Tex. App.—Fort Worth 2002, pet. ref'd) (although defendant asserted his trial counsel was ineffective for failing to file motion for new trial and failing to withdraw, where the record contained no evidence to rebut presumption that representation defendant received during motion-for-new-trial stage was adequate or to rebut presumption that defendant received advice about merits of filing motion for new trial and he rejected it, record was insufficient to show that counsel's performance fell below an objective standard of reasonableness); *see also Talkington v. State*, No. 2-02-441-CR, 2004 WL 102474, at *6 (Tex. App.—Fort Worth Jan. 22, 2004, no pet.) (mem. op., not designated for publication).

Finally, appellant argues that his trial counsel's performance fell below an objective standard of reasonableness because counsel did not file a motion for new trial "complaining that [a]ppellant did not have a sentencing hearing and that [a]ppellant did not have the opportunity to present mitigating evidence at the [adjudication] hearing prior to the trial court's ruling on punishment." As stated above, if a defendant was represented by counsel at trial and he does not file a motion for new trial, we must presume that it was because the defendant, with the benefit of

his counsel's continued representation, considered and rejected that option. *Cooks*, 240 S.W.3d at 911 n.6; *Carnell*, 535 S.W.3d at 572; *Monakino*, 535 S.W.3d at 563; *see also Benson*, 224 S.W.3d at 491 ("[W]e presume that the reason that a motion for new trial was not filed was because the [defendant] considered filing it but opted not to file it."). This presumption will not be rebutted where there is nothing in the record to suggest otherwise. *See Prudhomme*, 28 S.W.3d at 119; *see also Oldham*, 977 S.W.2d at 363; *Green*, 264 S.W.3d at 71. Because we have already concluded that there is no evidence in the record to rebut the presumption that appellant rejected the option of filing a motion for new trial, the record is insufficient to show trial counsel's performance fell below an objective standard of reasonableness because counsel did not file a motion for new trial.[9] *See Hudson v. State*, 128 S.W.3d 367, 381 (Tex. App.—Texarkana 2004, no pet.) (where nothing in record rebutted presumption that defendant was adequately counseled regarding motion for new trial and rejected that option, defendant could not prevail on claim his counsel was ineffective for failing to file motion for new trial); *see also Castillo v. State*, 186 S.W.3d 21, 30–31 (Tex. App.—Corpus Christi–Edinburg 2005, pet. ref'd).

---

[9] We also note that we must presume that a trial counsel's actions were sound trial strategy. *See Landers v. State*, 110 S.W.3d 617, 625 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). And here, the record is silent as to why appellant's trial counsel did not file a motion for new trial. *See Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007) ("Counsel's reasons for his actions or intentions do not appear in the record, and his conduct could have been part of a reasonable trial strategy.").

Based on the foregoing, we hold that appellant has not established that his trial counsel's performance fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687–88, 694, 697; *Williams*, 301 S.W.3d at 687 ("[A]ppellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").

We overrule appellant's second issue.

## C. Mitigation Evidence

In his third issue, appellant argues that his trial counsel rendered ineffective assistance of counsel because he purportedly "failed to investigate or present mitigating evidence" at the November 23, 2021 hearing on the State's motion to adjudicate guilt.

As previously stated, to prove a claim of ineffective assistance of counsel, appellant must show that (1) his trial counsel's performance fell below an objective standard of reasonableness *and* (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687–88, 694; *Lopez*, 343 S.W.3d at 142. Appellant has the burden to establish both prongs of the *Strickland* test by a preponderance of the evidence. *Jackson*, 973 S.W.2d at 956. "[A]ppellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams*, 301 S.W.3d at 687; *see also Strickland*, 466 U.S. at 697.

31

Related to appellant's third issue, we need not address whether appellant's trial counsel's performance fell below an objective standard of reasonableness when counsel purportedly "failed to investigate or present mitigating evidence" at the November 23, 2021 hearing on the State's motion to adjudicate guilt. Because even were we to conclude that trial counsel's performance was deficient, appellant, in his brief, does not argue that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687–88, 694; *Lopez*, 343 S.W.3d at 142; *cf. Ford v. State*, No. 01-17-00213-CR, 2018 WL 1473948, at *5 (Tex. App.—Houston [1st Dist.] Mar. 27, 2018, no pet.) (mem. op., not designated for publication) (concluding no need to address first *Strickland* prong, where appellant did not adequately brief second *Strickland* prong).

In order to assert an issue on appeal, an appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities." TEX. R. APP. P. 38.1(i). And an appellant waives an issue on appeal if he does not adequately brief that issue, i.e., by presenting supporting arguments, substantive analysis, and citation to authorities. *See id.*; *Russeau v. State*, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005); *Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000); *Wilson v. State*, 473 S.W.3d 889, 901 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). Although appellant asserts that his trial counsel was

ineffective for "fail[ing] to investigate or present mitigating evidence" at the November 23, 2021 adjudication hearing, his brief contains no argument, substantive analysis, or citation to authorities to show that the result of the proceeding would have been different but for his trial counsel's purported errors. *See Strickland*, 466 U.S. at 687–88, 694; *Lopez*, 343 S.W.3d at 142; *see also Ford*, 2018 WL 1473948, at *5. Accordingly, we hold that appellant has waived his third issue on appeal. *See Armendariz v. State*, No. 11-18-00361-CR, 2021 WL 2470337, at *4 (Tex. App.—Eastland June 17, 2021, pet. ref'd) (mem. op., not designated for publication) ("The failure to brief both prongs [of *Strickland* test] has been deemed to be a waiver of a claim for ineffective assistance of counsel."); *Ford*, 2018 WL 1473948, at *5; *Bessey v. State*, 199 S.W.3d 546, 555 (Tex. App.—Texarkana 2006) (ineffective-assistance-of-counsel complaint waived where defendant made no effort to show how record demonstrated prejudice), *aff'd*, 239 S.W.3d 809 (Tex. Crim. App. 2007).

## Conclusion

We affirm the judgment of the trial court.

Julie Countiss
Justice

Panel consists of Justices Kelly, Hightower, and Countiss.

Do not publish. TEX. R. APP. P. 47.2(b).